**Case No. 18-56245**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ART TOBIAS

Plaintiff-Appellee

v.

DANIEL EAST, L.A. School Police Officer, No 959

Defendant-Appellant

and

CITY OF LOS ANGELES, et al.,

Defendants

On Appeal from the United States District Court
for the Central District of California
No. 2:17-cv-01076-DSF-AS
Hon. Dale S. Fischer, United States District Judge

## APPELLANT'S OPENING BRIEF

Calvin House
GUTIERREZ, PRECIADO & HOUSE, LLP
3020 E. Colorado Blvd.
Pasadena, CA 91107
Telephone: 626-449-2300
Fax: 626-449-2330
calvin.house@gphlawyers.com

Attorneys for Appellant
Daniel East

# Table of Contents

Table of Contents ................................................................... i

Table of Authorities ............................................................ iii

1.  Introduction .................................................................. 1

2.  Jurisdictional Statement ................................................ 3

3.  Issues Presented ........................................................... 4

4.  Statement of the Case .................................................... 6
    A.  The Undisputed Material Facts ................................. 6
        i.    Murder of Alex Castaneda .............................. 6
        ii.   Interview of Officer East ............................... 8
        iii.  Officer East's written statement ..................... 12
        iv.   Role of Officer East's identification ............... 13
        v.    Trial, conviction and reversal ....................... 14
    B.  Claims asserted in the operative complaint ............. 16
    C.  Proceedings in the District Court .......................... 17

5.  Summary of the Argument ............................................ 20

6.  Argument ................................................................... 22
    A.  This Court has jurisdiction to review the District
        Court's denial of Officer East's qualified immunity
        defense ................................................................ 22
    B.  Standard of review ............................................... 29
    C.  Liability under section 1983 requires proof of
        individual participation. ...................................... 31
    D.  Officer East's actions did not violate clearly
        established law regarding the rights to counsel and
        against self-incrimination ..................................... 32
    E.  Officer East's actions did not violate clearly
        established law regarding unconstitutional
        interrogations ..................................................... 33
    F.  Officer East's actions did not violate clearly
        established law regarding fabrication of evidence. ... 34

G. Officer East's actions did not violate clearly
established law regarding malicious prosecution. ...................39

H. Officer East's actions did not violate clearly
established law regarding failure to intervene. ........................41

  i. There is no clearly established law requiring
officers to intervene outside of claims of excessive
force. ......................................................................................41

  ii. Officer East's actions do not show that he failed to
intervene to prevent a violation of Mr. Tobias's
rights.........................................................................................45

I. The version of the material facts asserted by Mr.
Tobias did not establish that Officer East conspired
with the other defendants to deprive Mr. Tobias of
his constitutional rights............................................................46

7. Conclusion .....................................................................................49

8. Statement of Related Cases .........................................................50

9. Certificate of Compliance with Rule 32(a)..................................51

# Table of Authorities

**Cases**

*Andrews v. Schafer,*
    888 F.3d 981 (8th Cir. 2018) ................................................... 43

*Awabdy v. City of Adelanto,*
    368 F.3d 1062 (9th Cir. 2004) ................................................. 40

*Behrens v. Pelletier,*
    516 U.S. 299 (1996) ................................................................ 24

*Black v. Montgomery County,*
    835 F.3d 358 (3d Cir. 2016)................................................35, 36

*Boyd v. Benton County,*
    374 F.3d 773 (9th Cir. 2004) ................................................. 29

*Briscoe v. Lahue,*
    460 U.S. 325 (1983) ................................................................ 40

*C. B. v. City of Sonora,*
    769 F.3d 1005 (9th Cir. 2014) ................................................ 42

*Caldwell v. City & County of San Francisco,*
    889 F.3d 1105 (9th Cir. 2018) ...........................................34, 35

*Chuman v. Wright,*
    76 F.3d 292 (9th Cir. 1996) ................................................... 31

*Collins v. Jordan,*
    110 F.3d 1363 (9th Cir. 1996) ................................................ 22

*Costanich v. Department of Soc. & Health Servs.,*
    627 F.3d 1101 (9th Cir. 2009) ................................................ 36

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998) ................................................................ 33

*Crowe v. County of San Diego,*
    608 F.3d 406 (9th Cir. 2010) .............................................32, 48

*Cunningham v. Gates,*
    229 F.3d 1271 (9th Cir. 2000) ............................................42, 45

*Dental v. City of Salem,*
    No. 3:13-cv-01659-MO, 2015 U.S. Dist. LEXIS 43566
    (D. Or. Apr. 2, 2015) ................................................................ 44

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir. 2001) ................................................. 34

*Foster v. City of Indio,*
    908 F.3d 1204 (9th Cir. 2018) ......................................25, 26, 30

*Frudden v. Pilling,*
    877 F.3d 821 (9th Cir. 2017) ................................................... 30

*Galbraith v. County of Santa Clara,*
    307 F.3d 1119 (9th Cir. 2002) ................................................. 41

*Gausvik v. Perez,*
    345 F.3d 813 (9th Cir. 2003) ................................................... 36

*George v. Morris,*
    736 F.3d 829 (9th Cir. 2013) ................................................... 22

*Gilbrook v. City of Westminster,*
    177 F.3d 839 (9th Cir. 1999) ................................................... 46

*Gillette v. Malheur County,*
    No. 2:14-CV-01542-SU, 2016 U.S. Dist. LEXIS 73938
    (D. Or. May 3, 2016) ................................................................ 44

*Isayeva v. Sacramento Sheriff's Department,*
    872 F.3d 938 (9th Cir. 2017) ............................................22, 27

*Jeffers v. Gomez,*
    267 F.3d 895 (9th Cir. 2001) .......................................22, 30, 31

*Johnson v. Jones,*
    515 U. S. 304 (1995) ........................................................23, 24

*Jones v. Cannon,*
    174 F.3d 1271 (11th Cir. 1999) ............................................... 43

*Jones v. Williams,*
    297 F.3d 930 (9th Cir. 2002) ................................................... 31

*Karl v. City of Mountlake Terrace,*
    678 F.3d 1062 (9th Cir. 2012) ................................................. 22

*Keates v. Koile,*
    883 F.3d 1228 (9th Cir. 2018) ................................................. 35

*Kitchen v. Dallas County,*
    759 F.3d 468 (5th Cir. 2014) ................................................... 42

*Livers v. Schenck,*
    700 F.3d 340 (8th Cir. 2012) ................................................... 43

*Mabe v. San Bernardino County,*
    237 F.3d 1101 (9th Cir. 2001). ................................................ 30

*Maropulos v. County of Los Angeles,*
    560 F.3d 974 (9th Cir. 2009) ...........................................22, 24

*Mercury Interactive Corp. Sec. Litig. v. Mercury*
    *Interactive Corp.,*
    618 F.3d 988 (9th Cir. 2010) ................................................... 42

*Milke v. City of Phoenix,*
    No. CV-15-00462-PHX-ROS, 2016 U.S. Dist. LEXIS
    171649 (D. Ariz. Jan. 8, 2016) ................................................ 44

*Miranda v. Arizona,*
    384 U.S. 436 (1966) ............................................................ 1, 15

*Nunies v. HIE Holdings, Inc.,*
    908 F.3d 428 (9th Cir. 2018) ................................................... 42

*Ortez v. Washington County,*
    88 F.3d 804 (9th Cir. 1996) ..................................................... 31

*P.B. v. Koch,*
    96 F.3d 1298 (9th Cir. 1996) ................................................... 22

*Pauluk v. Savage,*
    836 F.3d 1117 (9th Cir. 2016) ................................................. 22

*Plumhoff v. Pickard,*
    572 U.S. 765 (2014) ................................................................ 23

*Putman v. Gerloff,*
    639 F.2d 415 (8th Cir. 1981) ................................................... 42

*Rochin v. California,*
    342 U.S. 165 (1952) ................................................................ 33

*Rodis v. City, County of San Francisco,*
    558 F.3d 964 (9th Cir. 2009) ................................................... 29

*Spencer v. Peters,*
    857 F.3d 789 (2017) ..........................................................35, 36

*Stoot v. City of Everett,*
    582 F.3d 910 (9th Cir. 2009) ................................................... 34

*Taylor v. List,*
    880 F.2d 1040 (9th Cir. 1989) ................................................. 31

*Usher v. Los Angeles,*
    828 F.2d 556 (9th Cir. 1987) ................................................... 39

*Williams v. City of Oakland,*
    No. C-06-00303 EDL, 2008 U.S. Dist. LEXIS 6746
    (N.D. Cal. Jan. 30, 2008) ......................................................... 44

*Zhang v. Am. Gem Seafoods, Inc.,*
    339 F.3d 1020 (9th Cir. 2003) ................................................. 42

## Statutes

28 U.S.C. § 1291 ............................................................................. 3

28 U.S.C. § 1331 ............................................................................. 3

28 U.S.C. § 1343.................................................................... 3

Cal. Educ. Code § 38000 ................................................... 6

Cal. Pen. Code § 830.32 .................................................... 6

**Court Rules**

Circuit Rule 27-14........................................................... 6, 14

Fed. R. App. P. 32 ............................................................ 51

Fed. R. App. P. 4 ............................................................... 3

# 1. Introduction

Two LAPD detectives asked LA School Police Officer Daniel East to watch a surveillance video and tell them if he could identify a murder suspect on the video. After viewing the video several times, Officer East said the guy he was thinking of while watching was Plaintiff Art Tobias, then a middle school student. He also commented that he had a "hard time IDing that person," that "the full head of hair is throwing me off," and that the guy he was thinking of was "a lot smaller in stature."

Another school district employee told the detectives that he had seen the individual in the video outside the school. The detectives located Mr. Tobias outside the school, arrested him, and took him to an LAPD station, where he confessed during interrogation. The Los Angeles Juvenile Court adjudicated him to have committed the murder depicted on the surveillance video. The California Court of Appeal overturned the adjudication, because the confession was obtained in violation of *Miranda*.

After his interview with the detectives, Officer East's involvement in the investigation and prosecution of Mr. Tobias was

limited to (1) writing a statement for the LAPD about his identification of Mr. Tobias and an encounter he had with Mr. Tobias three months earlier, and (2) testifying at trial about his previous encounter with Mr. Tobias.

Despite Officer East's limited involvement in the events leading to Mr. Tobias's conviction, the District Court denied his motion for summary judgment motion dismissing the section 1983 claims against him, in its entirety. In doing so, the District Court seems to have ignored the fact that it thereby left in place two claims against Officer East for an unlawful interrogation that he was not present at, and a claim for malicious prosecution in a proceeding that Officer East did not have a role in initiating.

This Court should reverse, because Officer East's actions did not violate any clearly established law.

## 2. Jurisdictional Statement

The District Court had subject matter jurisdiction over this action because Appellant alleged claims arise under the Constitution and laws of the United States,[1] and claims for deprivation of his civil rights.[2]

This Court has appellate jurisdiction because this is an appeal from a collateral order denying a claim of qualified immunity.[3] Pursuant to the Court's order of September 27, 2018, the brief addresses the basis of the Court's jurisdiction in detail below at p. 22.

The District Court entered its order denying Officer East's claim of qualified immunity on September 17, 2018. [1 ER 1] Officer East filed his notice of appeal on September 20, 2018. [2 ER 25] His appeal is timely under Federal Rule of Appellate Procedure 4(a).

---

[1] 28 U.S.C. § 1331.

[2] 28 U.S.C. § 1343.

[3] 28 U.S.C. § 1291.

### 3. Issues Presented

Whether this Court has jurisdiction under the collateral order doctrine to review the District Court's denial of Officer East's immunity claim? As explained below at page 22, it does.

Whether Officer East's actions violated clearly established law regarding the rights to counsel and against self-incrimination? As explained below at page 32, they did not.

Whether Officer East's actions violated clearly established law regarding unconstitutional interrogations? As explained below at page 33, they did not.

Whether Officer East's actions violated clearly established law regarding fabrication of evidence. As explained below at page 34, they did not.

Whether Officer East's actions violated clearly established law regarding malicious prosecution? As explained below at page 39, they did not.

Whether Officer East's actions violated clearly established law regarding failure to intervene? As explained below at page 41, they did not.

Whether the version of the material facts asserted by Mr. Tobias established that Officer East conspired with the other defendants to deprive Mr. Tobias of his constitutional rights? As explained below at page 46, it did not.

# 4. Statement of the Case

## A. The Undisputed Material Facts

Daniel East is a member of the Los Angeles School Police Department, a law enforcement agency operated by the Los Angeles Unified School District. [4 ER 472; Cal. Pen. Code § 830.32; Cal. Educ. Code § 38000] When the events that gave rise to this action occurred, he was assigned to Berendo Middle School. [3 ER 419; 4 ER 452]

### i. *Murder of Alex Castaneda*

Shortly after midnight on August 18, 2012, Alex Castaneda was shot and killed in Los Angeles. A surveillance camera captured the shooting. [4 ER 522-23] A copy of the video from the surveillance camera was submitted to the District Court under seal as Exhibit 28 to Mr. Tobias's opposition to the summary judgment motion. [2 ER 26] Officer East is filing herewith a motion for leave to transmit a copy of the video under seal to the Court under Circuit Rule 27-14, so that it will be available should the Court wish to review it.

Earlier that night, Mr. Tobias's mother, Helen Contreras, had gone to the police station because she did not know where her son was, and wanted to file a missing person report. She showed a

photograph of Mr. Tobias to LAPD Officer Marshall Cooley, one of the division's gang officers. [3 ER 349-50]

Officer Cooley responded to the scene of the murder, where he viewed the surveillance video. [3 ER 351] He recognized the shooter as Mr. Tobias. [5 ER 597] Officer Cooley then called Officer Dora Born, who was a gang officer in a different division. He wanted her to look at the surveillance video, because she had input some information about Mr. Tobias into an LAPD database. [2 ER 133-34, 146] Based on her earlier review of descriptors and a photograph from LAPD resources, she believed the shooter on the surveillance video was Mr. Tobias. [2 ER 98-104, 110-14]

At an investigative conference on August 20, 2012, among the detectives working on the Castaneda murder, it was determined that the investigation would pursue Mr. Tobias as a suspect. [3 ER 248, 358] After the conference, Detectives Michael Arteaga and John Motto went to Berendo Middle School to attempt to obtain an additional identification of Mr. Tobias. [3 ER 358; 5 ER 642] Before he went to the school, Detective Arteaga reviewed the surveillance video. [2 ER 179-80]

## ii. Interview of Officer East

Upon their arrival at Berendo Middle School, the detectives went to Principal Rosa Trujillo, and told her that they were looking for someone to help make a possible identification of a suspect on the surveillance video. She suggested that they speak to Officer East and Assistant Dean Roger Negroe because they had more interactions with students who tended to have disciplinary issues. [3 ER 320-21] Detective Motto explained the purpose of visiting the school:

> We want to show you a video. There's somebody on the video, see if somebody recognizes him. Okay? If you do, great. If you don't, no problem. I'm not going to tell you the name. I think I know who it is. But I want to see if somebody can cold turkey identify him.

[3 ER 287]

The detectives interviewed Officer East separately from Mr. Negroe, so that they would not influence each other. [3 ER 289] Officer East did not have any idea that the detectives were coming to the school that day. [3 ER 422] He did not know anything about the Castaneda murder. [3 ER 423] At the beginning of the interview, the detectives played the surveillance video and pointed out the suspect for whom they were seeking identification. Officer East said, "That

one looks like a large student to be a middle school student." [3 ER 290-92] The following interchange ensued:

Officer East: I have a hard time IDing that person.

Officer Motto: Okay. No problem.

Officer East: I mean, the full head of hair is throwing me off a little bit.

Officer Motto: Okay.

Officer East: Unless he shaved it and he did have more hair last week.

Officer Motto: Who are you thinking of?

Officer East: The guy that I was thinking of is a lot smaller in stature, though.

Officer Motto: Okay.

Officer East: It's Art Tobias.

Officer Motto: That's who we think it is.

Officer East: (Laughter.) But, I mean, God, he's so much smaller in real life.

Officer Motto: You have the book? Can I see the picture that the mother gave?

Officer East: He just recently shaved his head. He came to work -- came to school this morning with a shaved head.

Officer Arteaga: He's here?

Officer East: Yeah. He came this morning.

[3 ER 293-94] Detective Motto showed Officer East a photo of Mr.

Tobias that his mother had provided. The interview continued:

> Officer Motto: . . . Is that -- Is that how he looked before the bald head?

> Officer East: Yeah. That's accurate. I could give you a school photo from last year if he took one. His schedule (inaudible).

> Officer Motto: Uh.

> Officer East: If you don't need it, I can (unintelligible.) That's fine.

> Officer Motto: I'd like to see it, at least if you have an accurate one there, just so we can com- -- That could be what that is. I don't know. So normally, he has the hair. But today, he came in balded.

> Officer East: See, I noticed because I was watching him like a hawk last year.

[3 ER 294-95]

Officer East described a previous encounter he had had with

Mr. Tobias, and then discussed Mr. Tobias's appearance in the photo.

"The photo – The photo makes him look a little bit more bigger and

stockier. But from that photo right there."

> Officer Arteaga: . . . What did you say was throwing you off, the hair?

> Officer East: No, I thought maybe he looked, like, taller and bulkier in the camera, which could be distorting through the mega pixels.

[3 ER 297-98] A little bit later Detective Motto said: "Yeah. Well, and the whole thing is this is what we have. So if I don't get it from everybody, including his mother, then we may have a hard time proving what you just saw. So somebody's going to have to frickin pay." [3 ER 301]

At some point while the recorder was off, the detectives asked Officer East to prepare a statement about what he had seen on the video. [2 ER 45-46]

After Officer East left, the detectives showed the surveillance video to Mr. Negroe, who said, "And you said that he's a Berendo student? I can't picture anybody like that right now." [3 ER 304] As Mr. Negroe was walking down the hallway after the completion of his interview, he saw a student standing outside the school who he believed matched the person he had seen in the surveillance video. He informed the detectives. [3 ER 412; 4 ER 483] Detective Arteaga believed the student whom Mr. Negroe identified was the person he had observed on the surveillance video. He then arrested the student, who was Mr. Tobias. [2 ER 179-80]

### iii. *Officer East's written statement*

Either the day of his meeting with the detectives or the day after, Officer East wrote a statement about his identification. [3 ER 271-72] No one helped him prepare the statement. The language in the statement was entirely his own. [3 ER 440-41] The statement described his work for the Los Angeles School Police, and his previous encounter with Mr. Tobias. It described his identification of Mr. Tobias as follows:

> On 08/20/12 at about 1435 hrs I, Officer East Ser#00959, assigned to the Campus of Berendo Middle School, was approached by Detective Arteaga and Detective Motto LAPD Rampart Division in regard a recent Murder investigation in the area.
>
> At which time Detective Motto had me view a video of a recent shooting in the area and possibly identify the Suspect in the video. I watched the video several times and stated that I was fairly sure that the Suspect in the video is Art Tobias (Student/Berendo Middle School) and stated that the video made the person look slightly taller and thicker. The Person in the video had a distinct walk and stature which is similar to that of Art Tobias.

[5 ER 648] Sometime between August 20 and August 24, Officer East delivered his written statement to LAPD Detective Jeff Cortina. [3 ER 272, 335:12-15; 5 ER 657]

#### iv.    Role of Officer East's identification

After August 20, 2012, Officer East did not speak with any of

the LAPD defendants, other than Detective Cortina. [3 ER 332:13-

17] His contacts with Detective Cortina were limited to

communications about his own written statement and Mr. Negroe's.

[4 ER 474:15-23, 478:9-26] He had nothing to do with the

interrogation of Mr. Tobias. [3 ER 330:8-12]

Detective Cortina signed a probable cause determination on

August 20, 2012, which mentioned Officer East's identification:

> On 8-18-2012 at approximately 0040 hours, vict Alex
> Castaneda along with others was standing in front of
> 1415 Alvarado Terrace when two male/Hispanics
> approached and open fired on the group. Victim
> Castaneda died from his GSW injury. The location had
> digital video recorded CCTV cameras. The video depicting
> the shooting was downloaded and shown to (2) LAPD
> Officers and (1) LAUSD Police Officer. Officers identified
> one of the shooters as being Art Tobias. Tobias mother,
> had filed a "missing person" report the night of the
> shooting. Detectives conducted a follow-up to Berendo
> Middle School based on the missing person report and
> possible identification. in the shooting. Tobias was
> transported to Rampart Station where he confessed to the
> shooting. The interrogation was recorded.

[5 ER 650] The probable cause determination was part of the

information provided to a judicial officer to determine whether there

was enough probable cause to justify continued detention of Mr. Tobias as a juvenile. [3 ER 250-51]

On August 22, 2012, the case was presented to a deputy district attorney, who decided to file charges against Mr. Tobias. [5 ER 658] The information provided to the deputy district attorney included the probable cause determination that referenced Officer East's identification, and the LAPD "Murder Book," which included a copy of Officer East's written statement. [3 ER 250-52] The Murder Book was submitted as a physical exhibit under seal as Exhibit 64 to Mr. Tobias's opposition to the summary judgment motion. [2 ER 26] Officer East is filing herewith a motion for leave to transmit a copy of the Murder Book under seal to the Court under Circuit Rule 27-14, so that it will be available should the Court wish to review it.

### v. *Trial, conviction and reversal*

On May 10, 2013, Judge Pro Tempore Benjamin Campos found that the People proved the charges against Mr. Tobias beyond a reasonable doubt. [3 ER 342:1-3; 5 ER 639, 658] Officer East testified at the trial about the encounter he had with Mr. Tobias before the interview on August 20, 2018, and the fact that Mr. Tobias had a

shorter haircut on August 20 than previously. He did not testify concerning his identification of Mr. Tobias as the shooter on the surveillance video. [3 ER 339; 4 ER 451-63]

The Second District Court of Appeal reversed Mr. Tobias's conviction on February 11, 2015. It summarized its ruling as follows:

> In this juvenile delinquency proceeding, we hold that a 13-year-old boy's statement—"Could I have an attorney? Because that's not me"—made during the course of a custodial interrogation after watching a video of a shooting was an unequivocal and unambiguous invocation of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (*Miranda*) and its progeny. In reaching this conclusion, we apply a standard of whether a reasonable officer in light of the circumstances known to the officer or that would have been objectively apparent to a reasonable officer, including the juvenile's age, would understand the statement by the juvenile to be a request for an attorney. We conclude that a reasonable officer would have understood the juvenile's statement in this case to be a request for an attorney.

> The juvenile court should have granted the motion to suppress the statements subsequently elicited by police. Because the *Miranda* error was not harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (*Chapman*), we reverse and remand for further proceedings.

[2 ER 68]

## B. Claims asserted in the operative complaint

The operative Second Amended Complaint purported to state seven federal civil rights claims against all the defendants: Count I, for violation of the right to counsel and the right against self-incrimination [4 ER 550]; Count II, for an unconstitutional interrogation in violation of the right to due process [4 ER 551]; Count III, for fabrication of evidence in violation of the rights to due process and to a fair trial [4 ER 552]; Count IV, for malicious prosecution under federal law [4 ER 554]; Count V, for failure to intervene to prevent the violation of constitutional rights [4 ER 555]; Count VI, for conspiracy to deprive Mr. Tobias of his constitutional rights [4 ER 556]; and Count VII, for *Monell* policy claims [4 ER 557].

In his motion papers, Mr. Tobias stated that he was not pursuing claims against Officer East for *Monell* Policy Claims, or for withholding evidence in violation of the Due Process Clause. [3 ER 344-45] Although Mr. Tobias's arguments in opposition to Officer East's summary judgment motion centered on alleged fabrication of evidence, this brief addresses all the claims except the two he specifically stated he was not pursuing against Officer East.

## C. Proceedings in the District Court

Mr. Tobias commenced this action by filing his initial complaint on February 9, 2017. [4 ER 563] He filed the operative Second Amended Complaint on February 7, 2018. It asserted claims against Officer East, the City of Los Angeles and several of the LAPD detectives and officers involved in the investigation of the Castadena murder, and the arrest and interrogation of Mr. Tobias [4 ER 518-59] Officer East answered on February 21, 2018. [4 ER 488]

Officer East filed his summary judgment motion on June 29, 2018. [4 ER 572] Because much of the evidence in the case related to juvenile proceedings within the jurisdiction of the Juvenile Court, and confidential police investigation files, both Officer East and Mr. Tobias asked the District Court to seal some of the exhibits submitted in connection with the motion. The District Court granted those requests in orders entered on July 12, 2018 and August 13, 2018. [2 ER 31; 3 ER 400] Officer East is filing herewith a motion to maintain the exhibits included in the excerpts of record under seal.

The District Court denied Officer East's summary judgment motion in its entirety on September 17, 2018, in a decision that also

addressed the summary judgment motions filed by the other

defendants. The District Court only discussed Officer East's liability

specifically in connection with the Third Count for falsification of

evidence. As to that claim, the District Court stated:

> While watching the surveillance video, Officer East told
> Detectives that he had a hard time identifying anyone; he
> eventually identified Plaintiff and said he was "so much
> smaller in real life." Yet Officer East's written statement
> says he was "fairly sure" the suspect was Plaintiff because
> the individual had a distinct walk and stature similar to
> Plaintiff, facts not mentioned in his recorded conversation
> with Detectives. Plaintiff also disputes when Officer East
> dropped off his and Negroe's statements and whether
> Officer East's written statement was influenced by his
> conversations with Detective Cortina.

[1 ER 16-17]

The District Court also mentioned Officer East with respect to

the conspiracy claim, stating that the evidence of an agreement

included "Detectives pressuring Officer East to make a false

identification." [1 ER 21] There is no specific mention of Officer East

in the discussion of any of the other claims.

The facts about Officer East's involvement discussed in the

District Court's decision were (1) that he made an equivocal

identification of the plaintiff when viewing the surveillance tape

during a recorded interview with LAPD detectives, saying that he had "a hard time IDing that person," but also stating he was "thinking" of Mr. Tobias while viewing the tape, (2) that he provided the LAPD detectives with a written statement that he watched the surveillance video several times, that he was fairly sure the suspect was Mr. Tobias, and that the individual on the tape had a distinct walk and stature similar to Mr. Tobias, (3) that he did not participate in the interrogation later held to be coerced, and (4) that he testified at the trial in juvenile court about Mr. Tobias's truancy, but not about his identification. [1 ER 4-7]

## 5.  Summary of the Argument

A. This Court has jurisdiction to decide Officer East's appeal from the denial of his qualified immunity defense. Although the District Court said it had identified disputed issues of material fact, for purposes of this appeal, Officer East accepts Mr. Tobias's version of the material facts. That brings this case within the Court's jurisdiction.

B. Officer East did not violate Mr. Tobias's rights to counsel and against self-incrimination, because he was not present at the interrogation by LAPD detectives that is the basis for Count I of the complaint.

C. Officer East did not violate Mr. Tobias's right to substantive due process in connection with the interrogation, because he was not present and because Officer East's actions did not shock the conscience.

D. Officer East did not violate Mr. Tobias's right not to be tried based on fabricated evidence, because his actions cannot support the conclusions that he made a material misstatement, or that his written statement was the proximate cause of Mr. Tobias's injuries.

E. Officer East did not violate Mr. Tobias's right to be free of malicious prosecution, because he was not actively instrumental in the initiation of the proceedings against Mr. Tobias.

F. Officer East is not liable for failure to intervene, because there is no clearly established law that a failure to intervene claim is available outside excessive force cases and because there was no opportunity for him to intervene to prevent violations by the LAPD defendants.

G. Officer East is not liable for the other defendants' action under a conspiracy theory, because his actions cannot support an inference that he shared a common objective to deprive Mr. Tobias of his constitutional rights.

## 6. Argument

### A. This Court has jurisdiction to review the District Court's denial of Officer East's qualified immunity defense.

In the *Maropulos* decision that the Court cited to the parties in directing them to address appellate jurisdiction, the Court stated the general rule that it does not have jurisdiction to consider arguments about sufficiency of the evidence. However, the Court has also recognized that a lower court statement that there are disputed issues of material fact is *not* an automatic bar to appellate review:

> [T]he Supreme Court has repeatedly stated that a court of appeals has jurisdiction over an appeal from a denial of qualified immunity, even when the district court's order concludes that there are disputed issues of material fact.[4]

> Where disputed facts exist, however, we can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct.[5]

---

[4] *George v. Morris*, 736 F.3d 829, 835 (9th Cir. 2013). See also *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012); *Collins v. Jordan*, 110 F.3d 1363, 1370 (9th Cir. 1996); *P.B. v. Koch*, 96 F.3d 1298, 1301 (9th Cir. 1996).

[5] *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). See also *Isayeva v. Sacramento Sheriff's Department*, 872 F.3d 938, 945 (9th Cir. 2017).

The Supreme Court explained the distinction between decisions on qualified immunity that are reviewable and those that are not when it upheld a qualified immunity defense in *Plumhoff v. Pickard*.[6] In the earlier *Johnson* case,[7] the Court had found appellate jurisdiction lacking.

> These officers moved for summary judgment, asserting that they were not present at the time of the alleged beating and had nothing to do with it. . . . The District Court determined, however, that the evidence in the summary judgment record was sufficient to support a contrary finding, and the court therefore denied the officers' motion for summary judgment. . . . The officers then appealed, arguing that the District Court had not correctly analyzed the relevant evidence. . . .

> This Court held that the *Johnson* order was not immediately appealable because it merely decided "a question of 'evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial."[8]

However, the decision under review in *Plumhoff* was "nothing like the order in *Johnson*."

> Petitioners do not claim that other officers were responsible for shooting Rickard; rather, they contend

---

[6] 572 U.S. 765, 772 (2014).

[7] *Johnson v. Jones*, 515 U. S. 304, 309 (1995).

[8] *Plumhoff, supra*, 572 U.S. at 772.

that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law. Thus, they raise legal issues; these issues are quite different from any purely factual issues that the trial court might confront if the case were tried; deciding legal issues of this sort is a core responsibility of appellate courts, and requiring appellate courts to decide such issues is not an undue burden.[9]

Th *Maropulos* decision is like the Supreme Court's *Johnson* case. The plaintiffs claimed that a deputy sheriff set fire to their home and hindered rescue efforts. The deputy argued on appeal that the plaintiffs failed to present enough evidence to create a triable issue as to proximate cause, whether he set fire to the plaintiffs' house, and whether he knowingly or intentionally lied to firefighters such that his statements violated any clearly established due process right. Because his appeal was based on a sufficiency of the evidence argument, the Court lacked jurisdiction.[10]

---

[9] *Id.* at 773. See also *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) ("Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and *Johnson* surely does not mean that every such denial of summary judgment is nonappealable").

[10] *Maropulos v. County of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009).

One of this Court's decisions from last year further explains the distinction between denials of qualified immunity that are reviewable and those that are not. In *Foster v. City of Indio*,[11] a police officer appealed from the denial of qualified immunity for claims (1) that he shot the decedent without justification, (2) that he made an investigative stop without reasonable suspicion, and (3) that he used excessive force in approaching the decedent with an unholstered gun. The Court held that it had jurisdiction to determine whether qualified immunity barred claims (2) and (3) but lacked jurisdiction to consider whether it barred claim (1).

With respect to claim (1), the declarations and deposition testimony revealed a dispute about the events that led to the shooting. The police officer testified that he shot the decedent as the decedent turned toward him with a gun in his hand. Other witnesses stated that they did not see a gun and did not see the decedent turn toward the police officer. The police officer argued that the contradicting accounts should not have been considered because they

---

[11] 908 F.3d 1204 (9th Cir. 2018).

did not effectively dispute his account. This Court declined to consider the police officer's appeal from the district court's decision on that claim, because it rested on the argument that the plaintiffs would not be able to prove that certain facts were true.

By contrast, the appeal from the district court's decision as to claims (2) and (3) concerned legal issues arising out of undisputed facts. There was no conflict in the evidence about the circumstances that led to the stop, and to the approach with an unholstered gun. This Court determined that it could entertain the appeal from the decision as to those claims, because it raised "a purely legal issue: whether, based on undisputed facts, [the police officer] violated clearly established law."[12]

Officer East's arguments on appeal mirror those regarding claims (2) and (3) in the *Foster* case. He is not asking the Court to decide whether Mr. Tobias can prove certain facts. For the most important facts, there is no conflict in the evidence. His interview with the LAPD detectives on August 20, 2012 was recorded on tape.

---

[12] *Id.* at 1213.

The surveillance video that Officer East reviewed was an exhibit to the summary judgment opposition, as was the statement that he wrote at the request of the detectives. The testimony that he gave at Mr. Tobias's trial is also an exhibit. Where there is a conflict (such as when he provided his written statement to the detectives), Officer East accepts the version that Mr. Tobias advocates. The question for the Court is whether there is clearly established law that makes Officer East liable under section 1983 for those actions. In reviewing the District Court's decision, it is appropriate to address either prong of the qualified immunity analysis, that is, (1) whether Officer East's conduct violated a constitutional right, or (2) whether the right was clearly established.[13]

In his motion to have the District Court certify Officer East's appeal as frivolous and in his motion to dismiss the appeal, Mr. Tobias attempted to trivialize Officer East's reliance on immunity by asserting that the summary judgment motion had only a passing

---

[13] *Isayeva*, *supra*, 872 F.3d at 945 ("Either prong can be adjudicated on appeal by taking the facts as most favorable to the plaintiffs and applying the pertinent legal standards to those facts").

reference to qualified immunity. Officer East has made his reliance on immunity as a defense clear from the outset of the action, with much more than a passing reference:

- Officer East's answer pleads that he is shielded from liability by qualified immunity and absolute immunity. [4 ER 513]

- The motion explained that Officer East is immune from any liability for having testified at the Plaintiff's trial. [Doc 100, pp. 8, 17, 28-29]

- The motion explained that Officer East has qualified immunity from liability for identifying the Plaintiff, and for providing a written statement, because he did not knowingly violate the law. [Doc 100, pp. 22-23]

- The motion explained that Officer East had immunity for his identification and written report, because he was not a complaining witness, or an individual who initiated the Plaintiff's prosecution. [Doc 100, p.23]

- The reply to the Plaintiff's opposition stated that Officer East was entitled to qualified immunity, "because his

actions were neither plainly incompetent nor a knowing violation of law," and devoted a separately numbered portion of the argument to qualified immunity. [Doc 152, pp. 5, 10-11]

- The District Court specifically addressed immunity, stating that "genuine disputes of material fact remain with respect to the claims against Defendants," and that the rights on which the claims were founded were well established. [1 ER 23]

## B. Standard of review

A district court's decision to deny summary judgment on the ground of qualified immunity is reviewed de novo.[14] Whether a legal principle is clearly established is a legal question reviewed de novo,[15] as is whether specific facts constitute a violation of clearly

---

[14] *Rodis v. City, County of San Francisco*, 558 F.3d 964, 968 (9th Cir. 2009).

[15] *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004).

established law.[16] The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.[17] In deciding that question, a "bare allegation alone, without any evidence in the record, is insufficient" to raise a genuine issue.[18]

To overcome Officer East's immunity defense, Mr. Tobias "must do more than simply allege that [Officer East] acted with an improper motive." Mr. Tobias must "'put forward specific, nonconclusory factual allegations' that establish improper motive."[19] Therefore, on appeal from the denial of qualified immunity, this Court has jurisdiction "to consider whether the district court erred in

---

[16] *Mabe v. San Bernardino County*, 237 F.3d 1101, 1106 (9th Cir. 2001).

[17] *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).

[18] *Foster*, *supra*, 908 F.3d at 1217-18.

[19] *Jeffers*, *supra*, 267 F.3d at 907

holding that there is a genuine issue of material fact respecting the motives of [the] defendants."[20]

## C. Liability under section 1983 requires proof of individual participation.

Although Mr. Tobias's complaint alleges generally that the "Defendants" or the "Defendant Officers" violated his rights, to survive the summary judgment motion, he must have evidence that Officer East personally participated in the violations alleged against him. Liability under section 1983 may not rest on "team liability" or a "team effort."[21] The case law does not "allow group liability in and of itself without individual participation in the unlawful conduct."[22] "Liability under section 1983 arises only upon a showing of personal participation by the defendant."[23]

---

[20] *Jeffers, , supra*, 267 F.3d at 910.

[21] *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002).

[22] *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).

[23] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). See also *Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1996) (dismissal was appropriate because the plaintiff "failed to allege that those defendants knew of or participated in activities connected to the alleged § 1983 violations").

**D. Officer East's actions did not violate clearly established law regarding the rights to counsel and against self-incrimination.**

The allegations of Count I focus on the LAPD detectives' interrogation of Mr. Tobias, and their refusal to provide Mr. Tobias with his legal guardian or an attorney. [4 ER 550-51] To establish a claim under section 1983 in such circumstances, the plaintiff must prove that the individual defendant knowingly obtained a statement from the plaintiff in violation of the self-incrimination clause that was later used against the plaintiff in a criminal proceeding.[24]

In this case, Officer East did not arrest Mr. Tobias, was not present during the interrogation, and did not give any advice or instructions about conducting the interrogation. After the LAPD detectives obtained Mr. Tobias's statement, Officer East did not have anything to do with the use of the statement to justify holding Mr. Tobias at juvenile hall, or to secure Mr. Tobias's conviction at trial. Therefore, Officer East's actions did not violate Mr. Tobias's right against self-incrimination.

---

[24] *Crowe v. County of San Diego*, 608 F.3d 406, 427 (9th Cir. 2010).

## E. Officer East's actions did not violate clearly established law regarding unconstitutional interrogations.

The allegations of Count II also focus on the interrogation, but purport to assert a substantive due process claim under the Fourteenth Amendment. As explained in the previous section, there is no basis for holding Officer East liable for matters related to the interrogation. He was not present and did not have anything to do with the use of the statement obtained from the interrogation.

In addition, such a claim is cognizable only if the conduct "shocks the conscience" and violates the "decencies of civilized conduct."[25] In a case raising the same claim, this Court ruled that the use of improper threats and promises, even when directed at a developmentally delayed young man did not satisfy that standard. Although the police officer's interrogation techniques might have supported a claim that the confession he elicited was involuntary, they did not rise to the level of a Fourteenth Amendment violation. There was no allegation that the officer intended to injure the

---

[25] *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952).

suspect "in some way unjustifiable by any government interest."[26]

Likewise, here, Officer East's conduct did not shock the conscience or display an intent to injure Mr. Tobias in a way that was unjustified by the government interest in identifying the perpetrator of a crime.

## F. Officer East's actions did not violate clearly established law regarding fabrication of evidence.

A fabrication of evidence claim is based on the due process clause. "[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government."[27] The plaintiff may prove the claim with "direct evidence of deliberate fabrication," or with "circumstantial evidence related to a defendant's motive."[28] As explained in *Devereaux*, a plaintiff relying on circumstantial evidence must have evidence either that "(1) [d]efendants continued their investigation . . . despite the fact that

---

[26] *Stoot v. City of Everett*, 582 F.3d 910, 928-29 (9th Cir. 2009).

[27] *Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018), quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

[28] *Id.* at 1112.

they knew or should have known that [the plaintiff] was innocent," or "(2) [d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."[29]

Because he did not investigate Mr. Tobias, the claim against Officer East must be based on direct evidence of deliberate fabrication. That requires proof that he made a statement "that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth."[30] In addition, there must be evidence that the alleged fabrication was "the cause in fact and proximate cause of his injury."[31] To show causation there must be a "reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."[32]

---

[29] 263 F.3d at 1076.

[30] *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018).

[31] *Caldwell*, *supra*, 889 F.3d at 1115.

[32] *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016), cited with approval in *Spencer v. Peters*, 857 F.3d 789, 798 (2017).

Further, "not all inaccuracies in an investigative report give rise to a constitutional claim."[33] It is not enough that the statement "may have been careless or inaccurate."[34] Errors based on "questions of tone or characterization" are not enough.[35] "There must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith. . . . [It is expected] 'that it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case.'"[36]

Mr. Tobias's opposition to the summary judgment motion identified the basis for the fabrication claim as (1) Officer East's supposed agreement with the LAPD detectives to claim that he identified Plaintiff when he had not, and (2) Officer East's written

---

[33] *Spencer*, *supra*, 857 F. at 798-99.

[34] *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003).

[35] *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1113 (9th Cir. 2009).

[36] *Black*, *supra*, 835 F.3d at 372.

statement about his identification. [Doc 138, p. 52] He does *not* claim

that Officer East's statements during the recorded interview were

deliberate fabrications. Hence, the claim rests entirely on supposed

discrepancies between what Officer East said during the interview

and what he wrote in his statement.

For the District Court, the important difference was that

Officer East said during the interview that he had a hard time

identifying anyone and that Mr. Tobias was so much smaller in real

life, but later wrote that he was "fairly sure" the shooter shown on

the surveillance video was Mr. Tobias. [1 ER 16] That difference does

not establish deliberate fabrication for two reasons.

*First*, the difference between the two statements is merely a

difference in tone or characterization of Officer East's state of mind

with respect to the identification. The transcript of the interview

shows that he believed the shooter shown on the surveillance tape

was Mr. Tobias. Although there may have been some discrepancies

(such as that Mr. Tobias had recently cut his hair and that the

individual on the video looked bigger), Officer East was "thinking of"

Mr. Tobias before the detectives said that he was their suspect. [3 ER

293-94] The fact that he may have later written that he was fairly sure it was Mr. Tobias is not a meaningful difference, particularly because he also wrote that the video "made the person look slightly taller and thicker." [5 ER 649] It was at most a "careless or inaccurate" statement about the interview that cannot support a deliberate fabrication claim.

*Second*, if Officer East had not submitted a written statement, the result would have been the same. The LAPD detectives arrested Mr. Tobias at the school before they had Officer East's written statement. The probable cause declaration that Detective Cortina wrote in connection with the detention at juvenile hall referred to the visit by detectives to the school but did not even state that Officer East had made an identification. [5 ER 651] The LAPD's follow-up investigation report mentioned Officer East's statements during the recorded interview, but did not report what he wrote in his later statement. It just noted that his written statement had been received. [5 ER 654, 657] No evidence about Officer East's identification of Mr. Tobias was presented at the trial. There is no

question that Mr. Tobias would have been arrested, charged and convicted in the absence of Officer East's written statement.

## G. Officer East's actions did not violate clearly established law regarding malicious prosecution.

To prove a claim for malicious prosecution under section 1983, Mr. Tobias must have evidence that Officer East committed the common law tort with the intent to deprive Mr. Tobias of his constitutional rights. The elements of the common law tort for purposes of this case are (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause.[37] Although a criminal prosecution is commenced by the filing of criminal charges, a malicious prosecution claim may be brought against officials other than the prosecutor, if they "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith

---

[37] *Usher v. Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) (applying California law to a claim arising in California).

conduct that was actively instrumental in causing the initiation of legal proceedings."[38]

Here, Officer East did not interact with the prosecutor's office until after the charges were filed, and then only to prepare for his testimony at trial, where he did *not* identify Mr. Tobias as the shooter.[39] [3 ER 338-39; 4 ER 475] The LAPD detectives conducted the investigation and compiled the Murder Book, the results of which they presented to the deputy district attorney who filed the charges. Although Officer East's identification was part of the investigation, by the time he was interviewed at the school, the two LAPD gang officers had already identified Mr. Tobias as the shooter on the surveillance tape, and the detectives working on the Castaneda murder had already determined the investigation would pursue Mr. Tobias as a suspect. Those facts do not show that Officer East's actions were "actively instrumental" in getting the charges filed.

---

[38] *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

[39] Even if he had committed perjury at trial, Officer East would have absolute immunity from liability for his testimony. *Briscoe v. Lahue*, 460 U.S. 325 (1983).

In any event, the only unlawful conduct that Mr. Tobias claims Officer East engaged in was to provide misinformation in the form of his written statement. To support a malicious prosecution claim on that base, Mr. Tobias would have to provide evidence of a "reckless or intentional falsification."[40] We have explained in the previous section that Officer East's actions do not support the argument that he engaged in knowing or reckless fabrication. Therefore, he did not violate Mr. Tobias's right not to be subjected to malicious prosecution.

## H. Officer East's actions did not violate clearly established law regarding failure to intervene.

### i. *There is no clearly established law requiring officers to intervene outside of claims of excessive force.*

Although Officer East did not make the point in the District Court, there is no clearly established law requiring police officers to prevent other police officers from violating constitutional rights other than in excessive force cases. The Court has discretion to consider the issue even though it was not raised below, because it is purely

---

[40] *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

legal, the record as to Officer East's involvement was fully developed during the summary judgment proceedings, and there is no prejudice to Mr. Tobias.[41] His attorneys may make the same arguments on this appeal that they would have made if Officer East had raised the issue in his summary judgment motion. No additional evidence is needed to decide the issue.

In excessive force cases, bystander officers are on the scene and have an immediate ability to step in. They will usually be able to recognize an excessive force violation easily. Therefore, federal courts all over the United States, including this one, have concluded that a law enforcement officer who knows another officer is using excessive force has a duty to intervene.[42] There are very few cases that have upheld failure to intervene claims outside the excessive force context.

---

[41] *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018); *C. B. v. City of Sonora*, 769 F.3d 1005, 1019 n.11 (9th Cir. 2014); *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993 (9th Cir. 2010); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).

[42] See *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Kitchen v. Dallas County*, 759 F.3d 468, 480 (5th Cir. 2014).

The Eighth Circuit described the landscape this way in 2012, the year of the events that led to the present lawsuit:

> We have not recognized a duty to intervene to prevent other constitutional violations. Though other circuits have recognized a duty to intervene outside of the excessive force context, [citations omitted], the Eleventh Circuit refused to find a clearly established duty to intervene to stop other constitutional violations, see *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999).[43]

The Eleventh Circuit's *Jones* decision rejected a claim based on a failure to intervene after one police officer learned that another officer had fabricated a confession.[44]

District courts in this Circuit have come to similar conclusions. The District Court in Arizona found that qualified immunity barred a claim that officers not present during an alleged confession subsequently failed to intervene to prevent a fellow officer

---

[43] *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012). That court reaffirmed that "there is no clearly established law regarding a duty to intervene outside of the excessive force context" in 2018. *Andrews v. Schafer*, 888 F.3d 981, 984 n.4 (8th Cir. 2018).

[44] 174 F.3d at 1286.

fabricating and then repeating the false confession.[45] The District Court for the Northern District of California has noted that "the duty to intervene cases relied upon by Plaintiff arise in the excessive force context."[46] The District Court in Oregon has come to the same conclusion.[47] This Court has not held that failure to intervene claims may be asserted in cases other than those involving excessive force.

Considering the conflicting decisions in other circuits, the lack of a definitive ruling from this Court and the views of the district court in this Circuit, there was no clearly established law in 2012 that would have led Officer East to believe he had a duty to intervene to stop the unlawful conduct by LAPD officers that Mr. Tobias bases his claims on.

---

[45] *Milke v. City of Phoenix*, No. CV-15-00462-PHX-ROS, 2016 U.S. Dist. LEXIS 171649 (D. Ariz. Jan. 8, 2016);

[46] *Williams v. City of Oakland*, No. C-06-00303 EDL, 2008 U.S. Dist. LEXIS 6746, at *29 n.6 (N.D. Cal. Jan. 30, 2008).

[47] *Gillette v. Malheur County*, No. 2:14-CV-01542-SU, 2016 U.S. Dist. LEXIS 73938, at *26 (D. Or. May 3, 2016); *Dental v. City of Salem*, No. 3:13-cv-01659-MO, 2015 U.S. Dist. LEXIS 43566, at *15 (D. Or. Apr. 2, 2015).

### ii.  *Officer East's actions do not show that he failed to intervene to prevent a violation of Mr. Tobias's rights.*

Even if the failure to intervene theory applies outside the excessive force context, it does not provide a basis for a claim against Mr. Tobias. That is because "officers can be held liable for failing to intercede only if they had an opportunity to intercede."[48]

Here, Officer East did not know anything about the Castaneda murder investigation other than what he learned during his interview on August 20. He did not know about the interrogation of Mr. Tobias, or any of the LAPD detectives' other activities aside from his interaction with Detective Cortina related to obtaining his statement and the statement of Mr. Negroe. He did not know about the presentation of the case to the deputy district attorney who filed the charges. He did not know what evidence would be presented at the trial, other than his own testimony which did not touch on any of the alleged unlawful activity by the LAPD detectives. [4 ER 472-76] There was no point where Officer East would have been able to step

---

[48] *Cunningham, supra*, 229 F.3d at 1289.

in and prevent one of the LAPD detectives from violating Mr.

Tobias's rights.

## I. The version of the material facts asserted by Mr. Tobias did not establish that Officer East conspired with the other defendants to deprive Mr. Tobias of his constitutional rights.

This Court has explained the elements of a civil conspiracy

claim as follows:

> To prove a civil conspiracy, the plaintiff must show that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." . . . "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." [citation omitted] A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.[49]

The operative complaint described the alleged conspiracy as

follows:

> 198. After the murder of Alex Castaneda, the Defendant Officers acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights against self-incrimination due process, and to a fair trial,

---

[49] *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999).

all as described in the various paragraphs of this Complaint.

199. Additionally, before and after Plaintiff's conviction, the Defendant Officers further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led either to his not being charged, his acquittal, or his more timely exoneration.

[4 ER 556-57] The District Court stated that Mr. Tobias had alleged

that all the defendants "acted in concert to deprive Plaintiff of his

rights," and then explained its reasons for denying summary

judgment as follows:

> Plaintiff contends the record is "full of evidence" of an agreement or meeting of the minds among Defendants, starting with Officers Born and Cooley's shaky identifications, Detectives pressuring Officer East to make a false identification, Detectives' coercive interrogation, and several fabricated written reports. Defendants, of course, deny all of this. Given these disputed facts, summary judgment is not appropriate because there is "a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding' to achieve the conspiracy's objectives."

[1 ER 21]

Here, Officer East's actions do not support an inference that he

had a meeting of the minds with the LAPD defendants to deprive Mr.

Tobias of his rights. The "key inquiry" is whether he shared a

"common objective" with the other defendants to have Mr. Tobias falsely prosecuted and convicted.[50] If there was a meeting of the minds, it had to have occurred during the interview on August 20. Before that, Officer East did not know that the LAPD detectives had identified Mr. Tobias as a suspect in the Castaneda murder. After that, his interactions with the detectives were limited to communications with Detective Cortina about submitting his own statement and Mr. Negroe's statement.

The interview was recorded and transcribed, and was devoid of any exchanges that could be interpreted as an agreement to deprive Mr. Tobias of his rights. The detectives showed Officer East the surveillance video and asked him questions. Officer East responded. He later wrote a statement at the detectives' request, but without any input or instruction from them. There was no discussion about obtaining a confession from Mr. Tobias or about putting together the case to be presented to the District Attorney's office for filing.

---

[50] *Crowe, supra*, 608 F.3d at 440-41.

## 7. Conclusion

By stating that he was "thinking of" Mr. Tobias while watching the surveillance video and later writing that he was "fairly sure" that the shooter depicted on the video was Mr. Tobias, Officer East did not open himself up to liability for the coercive interrogation, the charging and prosecution of Mr. Tobias, and his ultimate conviction. There is no clearly established law that would make Officer East liable on any of the theories that Mr. Tobias asserts. This Court should reverse the District Court's decision and direct it to enter judgment in Officer East's favor.

Dated: January 30, 2019

Respectfully submitted,

GUTIERREZ, PRECIADO & HOUSE, LLP

/s/ <u>Calvin House</u>

## 8. Statement of Related Cases

Four of the other defendants in this action—Michael Arteaga, Jeff Cortina, J. Motto and Julian Pere—have appealed the District Court's denial of their summary judgment motion. This Court has assigned Case No. 18-56360 to their appeal.

GUTIERREZ, PRECIADO & HOUSE, LLP

s/ <u>Calvin House</u>
Attorneys for Defendants-Appellees

## 9.  Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because

☒ this brief contains 10,250 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains __ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App P. 32(a)(6) because:

☒ This brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font, *or*

☐ This brief has been prepared in a monospaced typeface using __ with __.

s/ Calvin House

Attorney for Appellees

Dated: January 30, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 30, 2019.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Calvin House