---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———————————

ART TOBIAS,

*Plaintiff-Appellee,*

*v.*

DANIEL EAST, L.A. School
Police Officer, No. 959

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Central California
No. 2:17-cv-001076-DSF-AS

---

**PLAINTIFF-APPELLEE'S BRIEF ANSWERING AND IN RESPONSE TO
DEFENDANT EAST'S OPENING BRIEF AND ARGUMENT**

---

Anand Swaminathan
David B. Owens
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St, Third Fl
Chicago, Illinois 60607
(312) 243-5900

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ i

INTRODUCTION .................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 3

ISSUES PRESENTED ............................................................................ 4

STATEMENT OF THE CASE ............................................................... 5

    I.    The Alvarado Terrace Shooting ................................................. 5

    II.   Law Enforcement Fabricate Evidence Implicating Tobias Based Upon a Pretext, And Despite The Fact He Had No Connection to the Alvarado Terrace Shooting ................................................. 6

        A. The LAPD Officers Decide to Fabricate Evidence ................. 8

        B. East Agrees to Fabricate Evidence As Well ........................... 9

        C. The Defendants Fabricate Additional "Evidence" and Commit other Constitutional Violations To Wrongfully Convict Tobias ..................................................................... 13

    III.  The District Court Denies East's Motion for Summary Judgment ................................................................................... 16

SUMMARY OF THE ARGUMENT ...................................................... 18

ARGUMENT ......................................................................................... 19

    I.    Standards of Review .................................................................. 19

    II.   This Court Lacks Jurisdiction Over This Sufficiency-of-the-Evidence Appeal ....................................................................... 20

A. Federal Courts of Appeals Have Limited, Not General, Interlocutory Jurisdiction ..................................................... 21

B. The District Court's Denial of East's Motion for Summary Judgment Was A Factual, Not Legal, Determination That Is Unreviewable Now ................................................................. 24

C. That East's Current Arguments Are Based Upon Disputed Facts Confirms This Court Lacks Jurisdiction ..................... 28

D. East Cannot Obtain Jurisdiction Based Upon an Argument Forfeited Below ................................................................... 34

III. The District Court Correctly Found A Reasonable Jury Can Find East Violated Tobias's Constitutional Rights .................. 37

A. Legal Standard ..................................................................... 38

B. East Cannot Obtain Summary Judgment Because He Has Refused to Accept the Facts In The Light Most Favorable to Plaintiff and the Inferences that Flow from them .............. 40

C. A Reasonable Jury Can Conclude East Violated Tobias's Due Process Rights by Fabricating Evidence ............................... 40

1. Properly Construed, The Evidence Reveals that East Deliberately Fabricated Evidence .................................... 42

2. East's Arguments To the Contrary Fail ........................... 45

D. East Violated Tobias's Fourth Amendment Rights by Causing Him to Be Detained and Prosecuted Without Probable Cause ..................................................................... 51

1. Elements of the Claim ..................................................... 51

2. A Reasonable Jury Can Find that East Is Liable For Violating Plaintiff's Fourth Amendment Rights .............. 53

    E. East and the Detectives Agreed to Prosecute A 13-Year Old
       for a Murder He Did Not Commit ........................................57

    F. East Is Not Entitled to Summary Judgment on Plaintiff's
       Failure to Intervene Claim.....................................................62

       1. A Reasonable Jury Can Conclude East Failed
          to Intervene.........................................................................66

CONCLUSION ...........................................................................67

STATEMENT OF RELATED CASE .......................................68

CERTIFICATE OF SERVICE..................................................70

# TABLE OF AUTHORITIES

*Abdullahi v. City of Madison,* 423 F.3d 763 (7th Cir. 2005)................. 64

*Abel v. Miller,* 904 F.2d 394 (7th Cir. 1990) ......................................... 23

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970) ................................. 38

*Alaska Airlines, Inc. v. United Airlines, Inc.,* 948 F.2d 536
    (9th Cir. 1991)................................................................................ 26

*Anderson v. Branen,* 17 F.3d 552 (2d Cir. 1994) ................................... 64

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...................... 29, 38

*Apostol v. Gallion,* 879 F.2d 1335 (7th Cir. 1989)................................. 36

*Awabdy v. City of Adelanto,* 368 F.3d 1062 (9th Cir. 2004) ............ 52, 54

*Ayala v. KC Envtl. Health,* 426 F. Supp. 2d 1070
    (E.D. Cal. 2006) ............................................................................ 53

*Baker v. Roman Catholic Archdiocese of San Diego,*
    725 F. App'x 531 (9th Cir. 2018)................................................... 39

*Beck v. City of Upland,* 527 F.3d 853 (9th Cir. 2008) ........................... 56

*Bolker v. C.I.R.,* 760 F.2d 1039 (9th Cir. 1985) .................................... 35

*Butler v. Elle,* 281 F.3d 1014 (9th Cir. 2002).......................................47

*Caldwell v. City & County of San Francisco,* 889 F.3d 1105
    (9th Cir. 2018)......................................................................... *passim*

*Chaney v. Wadsworth,* 700 F. App'x 592 (9th Cir. 2017) ...................... 39

*Chism v. Washington State,* 661 F.3d 380 (9th Cir. 2011) .................... 51

*Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992) .............................. 18, 36

*Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090
    (9th Cir. 2005) ................................................................................ 39

*Cohen v. Beneficial Loan Corp.*, 337 U.S. 542 (1949) ........................... 21

*Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996) ................................... 24

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101
    (9th Cir. 2010) ........................................................................ *passim*

*Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010) ................ 57

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) .............. 62, 63, 67

*Deveraux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ...................... 26, 40, 41

*Galbraith v. County of Santa Clara*, 307 F.3d 1119
    (9th Cir. 2002) ...................................................................... 26, 55

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) .............................. *passim*

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) ........................................ 18

*Estate of Tucker ex. rel. Tucker v. Interscope Records, Inc.*,
    515 F.3d 1019 (9th Cir. 2008) ....................................................... 53

*Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018)................ 22, 27, 28

*Franklin v. Fox*, 312 F.3d 423 (9th. Cir. 2002)................................ 26, 58

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013)............................... 19

*Garver v. Brandt*, 584 F. App'x 393 (9th Cir. 2014)............................... 23

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) .............................. *passim*

*Gilbrook v. City of Westminister*, 177 F.3d 839 (9th Cir. 1999).........58 59

*Graham v. Connor*, 490 U.S. 386 (1989)..................................................52

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014).......................................49

*Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988)..........................................40

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997).................................54

*Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994
    (N.D. Ill. Jan. 26, 2009)....................................................................66

*Hang v. County of Alameda*, 2011 WL 5024641
    (N.D. Cal. Oct. 20, 2011)................................................................65

*Hurt v. Vantlin*, No. 3:14-cv-00092-JMS-MPB, 2017 WL 1021396
    (S.D. Ind. March 16, 2017).............................................................65

*Jensen v. Stangel*, 762 F.2d 815 (9th Cir. 1985).....................................57

*Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159
    (9th Cir. 2013).................................................................................23

*Johnson v. Jones*, 515 U.S. 304 (1995) ...................................................22

*Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011)............................27, 40

*Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999) ..................................65

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) .......................................51

*Knox v. Southwest Airlines*, 124 F.3d 1103 (9th Cir. 1997)....................20

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) .................58, 62

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981).........................50

iii

*Maddox ex rel. D.M. v. City of Sandpoint*, 732 F. App'x 609
        (9th Cir. 2018)................................................................ 30

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ........................... 51, 52, 54

*Maropulos v. County of Los Angeles*,
        560 F.3d 974 (9th Cir. 2009) ........................................ 23, 27, 35

*Mendez v. Cty. of Los Angeles,* 897 F.3d 1067 (9th Cir. 2018)................ 50

*Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283
        (9th Cir. 1999)................................................... 17, 57, 58 60

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................. 22, 23, 37

*Motley v. Parks*, 383 F.3d 1058 (9th Cir. 2004)......................................... 63

*Oritz v. Jordan*, 562 U.S. 180 (2011) ...................................................... 21

*In re Ozenne*, 841 F.3d 810 (9th Cir. 2016)............................................... 19

*Pelletier v. Fed. Home Loan Bank of San Francisco*,
        968 F.2d 865, 870 (9th Cir. 1992) ................................................ 23

*Prosser v. Crystal Viking F/V,* 940 F.2d 1535 (9th Cir. 1991) ............... 50

*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996) .................................... 47

*Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022
        (9th Cir. 2002)....................................................................... 63

*Randall v. Prince George's County*, 302 F.3d 188 (4th Cir. 2002) .......... 64

*Reid v. Wren*, 57 F.3d 1081 (10th Cir. 1995) ........................................... 64

*Rehberg v. Paulk*, 566 U.S. 356 (2012) .................................................... 52

*Reyes v. City of Richmond*, 287 F.3d 346 (5th Cir. 2002) ................. 27, 40

*Ricks v. City of Pomona*, No. 18-cv-07862, 2019 WL 296199
  (C.D. Cal. July 25, 2019) ............................................................... 65

*Schuering v. Traylor Bros., Inc.*, 476 F.3d 781 (9th Cir. 2007) ............. 38

*Sierra Medical Services Alliance v. Kent*, 883 F.3d 1216
  (9th Cir. 2018) ............................................................................. 38

*Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011) ..................................... 52

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) ............................... 41, 49

*Staub v. Proctor Hosp.,* 562 U.S. 411 (2011) ......................................... 50

*Stewart v. Jacobs*, 2010 WL 11519288 (D. Ariz. Apr. 16, 2010) ............ 65

*Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2015) .............................. 27, 40

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014) ................................. 19, 29, 38, 39

*Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007) ..................................... 29

*Donahoe v. Arpaio*, 986 F. Supp. 2d 1091 (D. Ariz. 2013) ..................... 53

*United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994) .............................. 63

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539
  (9th Cir. 1989) ............................................................................. 58

*W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970 (9th Cir. 2012) ......... 29

*Ward v. EEOC*, 719 F.2d 311 (9th Cir. 1983) ......................................... 58

*Whitlock v. Brueggemann,* 682 F.3d 567 (7th Cir. 2012) ....................... 50

*Whren v. United States*, 517 U.S. 806 (1996) ......................................... 52

*Wilkerson v. Seymour*, 736 F.3d 974 (11th Cir. 2013) ............................ 65

*Will v. United States*, 389 U.S. 90 (1967) ................................................. 21

*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994).......................................... 64

*Yousefian v. City of Glendale*, 779 F.3d 1010 (9th Cir. 2015)................ 52

## INTRODUCTION

Appellee Art Tobias was wrongfully convicted for a murder he did not commit. Recognizing that his constitutional rights had been violated, Tobias's conviction was overturned on direct appeal. This civil-rights action followed.

Tobias has adduced extensive evidence that would easily enable a reasonable jury to conclude that his wrongful conviction was the result of misconduct by Defendant Daniel East, an officer from the Los Angeles Unified School District (LAUSD); two police officers and four detectives from the Los Angeles Police Department (LAPD); and the policies, practices, and customs of the City of Los Angeles.

The District Court recognized this, and properly denied motions for summary judgment filed by all defendants, ordering the matter to proceed to trial. This interlocutory appeal pertains to Defendant East. In the proceedings below, East's sought summary judgment based on a core argument: there was insufficient evidence to support Tobias's claims against him. The district court disagreed, concluding that the evidence was sufficient to allow a reasonable jury to find in favor of

Tobias and against East. Volume 1 Plaintiff's Excerpt of Records ("PER") 1-24.

East now advances this interlocutory appeal, repackaging the same arguments about the sufficiency of the evidence rejected below. But, this Court lacks jurisdiction to consider this argument. To be clear: this is not a qualified immunity appeal. There is no dispute that this action seeks to hold East accountabile for the violation of recognized constitutional rights, and  East never argued below that the countors of these rights—*e.g.*, the fabrication of evidence, seizure in the absence of probable cause, and conspiring with others to violate a civilian's constituiotnal rights—were not "clearly established" at the time of his conduct. This appeal should be dismissed for want of jurisdiction.

Assuming this Court has jurisdiction, East's arguments still fail. As the District Court recognized below, the facts here are hotly disputed and it is for a jury, rather than a court, to resolve the differences. Troublingly, in seeking summary judgment, East relied on disputed facts and thus refused to take the evidence in the light most favorable to Tobias. East further made inferences in his own favor, rather than Tobias's. Such an approach is contrary to law, which requires a party

seeking summary judgment to take the facts in the light most favorable to the non-movant and make all inferences in thier favor.

Here, when the appropriate legal standard is applied—and all facts and reasonable inferences therefrom are taken in Tobias's favor—the record is beyond sufficient for a reasonable jury to find East liable for violating Tobias's constitutional rights. Accordingly, the ruling below should be affirmed and the cause remanded for trial.

## JURISDICTIONAL STATEMENT

This case was filed in the District Court for the Central District of California, asserting federal constitutional claims via 42 U.S.C. § 1983. The district court had jurisdiction under 28 U.S.C. § 1331.

This court lacks jurisdiction over East's interlocutory, premature appeal because it does not arise from a final order as required by 28 U.S.C. § 1291, an issue discussed further below. No other timeliness issues preclude jurisdiction.

# ISSUES PRESENTED

1. Whether this Court has interlocutory jurisdiction to consider East's appeal of a non-final order denying summary judgment based upon a determination that disputed facts precluded summary judgment and that there was sufficient evidence for a reasonable jury to find for Tobias on his claims? Answer: No.

2. Whether this Court has jurisdiction to consider a new argument that East forfeited below and has advanced for the first time in an attempt to cure a jurisdictional defect? Answer: No.

3. Whether, assuming *arguendo* this Court has jurisdiction, East can obtain summary judgment while refusing to accept the non-movant's facts and refusing to make all inferences from those facts in Tobias's favor? Answer: No.

4. Whether, assuming *arguendo* this Court has jurisdiction, the district court correctly denied summary judgment to East with regard to Tobias's claims for the fabrication of evidence, conspiracy, seizure without probable cause, and failure to intervene? Answer: Yes.

## STATEMENT OF THE CASE

### I.   The Alvarado Terrace Shooting

On August 18, 2012, shortly after midnight on a Friday night turned Saturday morning, Alex Castaneda was shot and killed on the 1400 block of Alvarado Terrace in Los Angeles. 2PER 109, ¶61.[1] Castaneda was with a group of friends, two of whom were also shot but whose injuries were non-fatal. *Id.* Surveillance footage captured the primary shooter and depicts a heavyset adult male firing at Castaneda and the others. *Id.* ¶¶67-68. Consistent with the video, witnesses described the shooter in the video as an adult, about 6 feet tall, and weighing nearly 200 pounds. *Id.* ¶63. Because the perpetrators yelled "MS" before firing, they were believed to be members of the "Mara Salvatrucha" gang. *Id.* ¶64.

Tobias had nothing to do with the Castaneda homicide, and was completely innocent of this offense. *Id.* ¶60. At the time of the shooting, Tobias was a skinny 13-year-old child who stood under 5 feet tall, and weighed just over 100 pounds; he looked nothing like the substantially

---

[1] Citations to paragraphs refer to the Statement of Material Facts Tobias relied upon below, which is at pages 108-161 of Volume II of PER. All other citations to PER correlate to the "PER" bates numer affixed to each page and that are paginated across all volumes.

larger adult shooter depicted on surveillance video and observed by multiple witnesses. *Id.* ¶¶61-68. Tobias was also at home with his mother when the shooting occurred, and could not have committed the crime. *Id.* ¶70. Tobias was not a member of the MS gang. *Id.* ¶66.

## II. Law Enforcement Fabricate Evidence Implicating Tobias Based Upon a Pretext, And Despite The Fact He Had No Connection to the Alvarado Terrace Shooting

Four LAPD homicide detectives from the Rampart Division—Michael Arteaga, Jeff Cortina, John Motto, and Julian Pere ("the Detectives")—were ultimately assigned to investigate the homicide. *Id.* ¶71. Detectives Motto and Pere reported to the scene the evening of the shooting where they collected evidence, spoke with other officers, and obtained the surveillance video footage. *Id.* None of the eyewitnesses, including surviing victims, provided any information that implicated Tobias and no evidence at the scene connected him to the crime. *Id.*

Hours earlier, between 9 and 10pm Friday evening, Tobias's mother, Helen Contreras, went to the Rampart Division station to file a missing person's report because she could not find Tobias. *Id.* ¶74. After speaking with one officer, Contreras was referred to a Rampart "gang specialist," Officer Cooley, given the fact that she lived in MS territory

(but despite the fact that she did not ask to see a gang officer and indicated her son was not a member of the MS gang). *Id.* ¶75.

Contreras briefly showed Cooley a photo of her son on her cell phone, but Cooley had never seen Tobias before and did not recognize him. *Id.* ¶¶75-76. Cooley did not obtain a copy of this picture. *Id.* ¶77. After speaking with Contreras, Cooley checked LAPD computers to see what information the Department had regarding Tobias, which confirmed that he was a 13-year-old boy who weighed just over 100 pounds and stood under 5-feet tall. *Id.* ¶¶83-85.

Because Cooley was a gang specialist and the MS gang was involved, he reported to the scene of the Castaneda shooting. *Id.* ¶78. There, Cooley learned about the surveillance video of the shooting, which he watched. *Id.* ¶¶81-82. Another Rampart Division gang officer, Defendant Dora Born, reported to the scene and viewed the video. *Id.* ¶79. Like Cooley, Born had never met Tobias. *Id.* Both Cooley and Born were aware the evidence in their own LAPD resources and the surveillance footage pointed away from Tobias. *Id.* ¶83.

The Detectives learned about the missing-persons report and then quickly honed in on Tobias as their only suspect, knowing that he

looked nothing like the shooter on the surveillance video and described by witnesses, *id.* ¶¶69, 101, 128, and despite the fact that Contreras had called the Rampart Division to inform the officers Tobias had returned home and was not missing. *See* 3PER 198-99.

## A. The LAPD Officers Decide to Fabricate Evidence

Rather than conduct an honest investigation, the Detectives decided to manufacture fabricated evidence purporting to implicate Tobias in the shooting. 2PER 111, 121, ¶¶69, 101-02. Accordingly, in a departure from standard police practices, the Detectives refused to conduct photographic or in-person lineups with the victims or surviving witnesses. *Id.* ¶¶73, 180-81. Instead, the Detectives conducted an "investigative conference," deciding to pursue Tobias as a suspect and to use the missing persons report as a pretext for so doing. *Id.* ¶¶101, 128. The result? The Detectives would attempt to manufacture "identifications" of Tobias based on the surveillance video from various other individuals, none of whom were at the scene and some of whom had never even met Tobias. *Id.* ¶¶74-101.

The Detectives started with Cooley and Born, who both provided fabricated (inconsistent and implausible) reports claiming that they had

identified Tobias from the video footage when they had not. *See id.*
¶¶113-20. The District Court recognized Tobias's claim of fabricated
evidence, including among other things reports purporting to
documenting "identifications" of Tobias by Born and Cooley, must go to
trial given the disputed evidence in the record and the fact that a
reasonable jury can conclude that this (and other) evidence was
fabricated. 1PER 16-18; *see also* 2PER 120, ¶100 (fabricated reports of
witness descriptions altered to appear to match Tobias); *id.* ¶¶98, 125-
26 (fabricated chronology).

## B. East Agrees to Fabricate Evidence As Well

East's decision to join the Castaneda homicide investigation began
two days after the shooting, on Monday August 20, 2012, when
Detectives Arteaga and Motto went to Berendo Middle School, where
East was employed and Tobias was a student. *Id.* ¶101. The Detectives
continued in their modus operandi: to drum-up fake "identifications"
from the surveillance video of the shooting. *Id.* ¶102. East's duties as an
LAUSD officer included conducting criminal investigations and
coordinating with other law enforcement agencies and officers, like the
Detectives. *Id.* ¶103.

The meeting between Arteaga, Motto, and East was audio-recorded, *id.* ¶121, and indicates the following.[2] By the time the recording begins, East knew Arteaga and Motto were at the school to show him, and others, a video and ask them to identify the person therein. *Id.* ¶¶103-04. Motto and Arteaga told East about the shooting, that the victim had died, and that they believed the shooter to be a student at the school. *Id.* ¶¶102-104.

When East first watched the video, he immediately recognized that the shooter was too large to be a middle school student. *Id.* ¶105. East watched the video a second time, and again affirmed that he could not make an identification from the surveillance video, *id.* ¶106, even stating: "I have a hard time IDing that person." 7PER 974. Despite this, East told the Detectives that he was "thinking" of a person who he described as being too small to be the person in the video—Art Tobias. 2PER 122, ¶¶107-08. Even though East had *not* identified Tobias or any

_____

[2] East acknowledges this fact but has curiously neglected to providethe Court with the audio. The recording provides further context beyond the transcript that additionally illustrates the reasonableness of the inferences that must be made in Tobias's direction. Tobias has provided that to the Court. There are also two versions of the transcript in the record. East's contains errors and labels portions "inaudible" even though, upon careful listen, the conversation can be heard. Tobias has provided a more accurate and fulsome version. *See* 7PER 965-96.

other person as the shooter in the video, the Detectives told East that they believed that Tobias was the shooter, saying "that's who we think it is." *Id.* ¶109. Given the absurdidty, East laughed and again pointed out that Tobias was too small to be shooter in the video. *Id.* ¶110.

Nevertheless, after watching the video again and providing Arteaga and Motto with additional school pictures of Tobias, East agreed to assist in implicating Tobias in the crime. *Id.* ¶¶110-11. In the couse thereof, East watched the video again, and ultimately agreed to later claim that he had made an identification when he had not.

East further agreed to contribute to the investigation in a variety of ways, including but not limited to: assisting the officers in finding pictures of Tobias from prior school years (an effort aimed at finding one that would make it appear that Tobias could have been the person in the video, even though they knew it was not him); identifying other people at the school who knew Tobias; writing a statement (that included falsehoods, discussed below) on an LAPD investigative form; attempting to locate and provide Detectives with "Field Interview" cards of prior contacts with Tobias; and agreeing to obtain a statement from another Berendo employee, Roger Negroe. *Id.* ¶¶104-06, 111-26.

The recording indicates East knew he had agreed to falsely implicate Tobias in the shooting despite being unable to identify him (or anyone) from the video. *Id.* Arteaga and Motto discussed with East what his statement would be. *Id.* They even set out their plan: they were going to try to get other people, including Negroe and Contreras (Tobias's mother), to identify Tobias as the shooter. *Id.* ¶126. East had also informed the detectives that Tobias had interacted with other LAPD juvenile officers, identifying more candidates to view the video in order to get additional false identifications. *Id.* ¶¶107-08; 7PER 977.

The conversation was explicit: knowing Negroe was about to view the videow, they were also going to try to "rope" Tobias's mother into "all of this," and if she (and everybody) did not "identify" 13-year-old Tobias as the adult in the video, they would have a "hard time proving what [East] just saw," even though East had not made an identification. *Id.* ¶114. If and when these efforts faltered, as Motto put it, "somebody's going to have to frickin pay." *Id.* That "somebody" was Tobias.

Following the recorded meeting with East, Detectives Arteaga and Motto tried to obtain an "identification" of Tobias from Negroe. *Id.* ¶116. Negroe indicated that, like East, he was unable to *make an*

*identification* from the video, though he was able to describe the shooter as "chubby." *Id.* ¶¶115-16. East and these detectives then met a second time—without audio recording—where East knew that Negroe had not made an identification from the video and where they discussed East would write a statement. *Id.* ¶¶116, 118.

### C. The Defendants Fabricate Additional "Evidence" and Commit other Constitutional Violations To Wrongfully Convict Tobias

After East agreed to provide false evidence against Tobias to attempt to "prove what he just saw," Detectives Motto and Arteaga arrested Tobias for the Castaneda murder. *Id.* ¶¶117, 127. For his part, East apprehended the middle schooler with Tobias at the time and drove him to the Rampart Division station. *Id.* ¶117. Then, the plan just discussed with East was implemented: Arteaga attempted to pressure the 13-year old's mother, Contreras, into making a false identification of her son and "rope" her into the case. *Id.* ¶136. As with Negroe, this did not work and she refused to falsely identify Tobias as the shooter. *Id.* As a consequence, Tobias was made to "pay." Through a litany of coercive and unlawful tactics so egregious they "shock the conscience," the Detectives interrogated Tobias until he provided a false confession. *See*

*generally id.* ¶¶134-82.  In addition to the coercion, the Detectives fabricated the content of the confession as well. *Id.* ¶¶169-70, 172-73.

Tobias was charged with the Castaneda homicide based upon four pieces of evidence, all of which were fabricated: (1) Cooley's false claim that he identified Tobias from the surveillance video; (2) Born's false claim that she identified Tobias from the surveillance video; (3) East's false claim that he identified Tobias from the surveillance video; and (4) the false, coerced, and fabricated confession. *Id.* ¶84.

The next day, different LAPD officers arrested Eric Martinez. *Id.* ¶¶183, 190-95, 204-12. Martinez, a 20-year-old Hispanic male: matched the description and clothing of the perpetrator in the surveillance video; was driving a car that fit the description of the perpetrators' getaway vehicle; and was purportedly yelling "MS" from his car. *Id.* ¶¶64, 190-92. Frensic testing further confirmed that Martinez was in possession of the gun that was used in the Castaneda shooting. *Id.* ¶193.Evidence about Martinez was suppressed during the pendency of the criminal proceedings, in violation of due process. *See generally id.* ¶¶187, 195.

In the meantime, as planned, East wrote a report on LAPD (rather than LAUSD) documentation, which he turned over to the

Detectives. *Id.* ¶118. This report was used to implicate Tobias in the Castaneda homicide. *Id.* ¶125. East's report contained multiple false statements, including that after watching the video multiple times, East "*stated* that I was fairly sure that the Suspect in the video *is* Art Tobias"—nearly the opposite of what he said at the time he actually watched the video both the first and second times he watched it. *Id.* ¶121 (emphasis added). In fact, even after learning Tobias was the target, East never once "*stated*" that the person in the video "*is* Art Tobias." *Id.* ¶122 (emphasis added). The statement was false. Officer East included this and other falsehoods in his report—*e.g.,* a claim about Tobias having "distinct walk" that he had not actually said—to help the Detectives wrongly frame Tobias for the murder. *Id.* ¶¶123-26.

The efforts just described—to have East and others falsely claim they had identified Tobias; to attempt to "rope" Contreras into the case; to make  Tobias "frickin pay" if Contreras did not falsely identify her son from the video; and others—were successful. Tobias was wrongfully convicted of a murder he did not commit. *Id.* ¶¶60, 214. Tobias's conviction was overturned on direct review by the Court of Appeal, which determined that it had been obtained in violation of his Fifth

Amendment rights. 6PER 837-61. On remand, the district attorney dismissed the charges. 2PER 151, ¶214. This action followed.

## III. The District Court Denies East's Motion for Summary Judgment

Tobias claims East: (1) fabricated evidence against Tobias in violation of due process; (2) caused Plaintiff to be seized in absence of probable cause in violation of the Fourth Amendment; (3) agreed to participate in an effort to unlawfully prosecute Tobias of the Castaneda homicide; and (4) failed to intervene.

East's summary judgment motion was misguided. For one, the motion rested a misunderstanding of Tobias's claims; namely, that East's liability was confined to his role as a co-conspirator. East's motion was also destined to fail because he refused to accept as true Tobias's facts and the reasonable inferences that follow. Instead, East rejected those facts and made inferences in his own favor to repeatedly argue there was insufficient evidence to support Tobias's claims.

The District Court's denial of East's motion was a determination that disputes of material fact require Tobias's claims to be submitted to the jury. As it concerns Tobias's fabrication claim, it is "readily apparent that Plaintiff's version conflicts with Defendants' version of

these events." 1PER 17. As it concerns East's argument that any § 1983 claim against him fails because his conduct was not the proximate cause of Tobias's injuries, the District Court recognized "this is simply another disputed issue of fact for the jury." *Id.* at 17 n.4. Likewise, as it concerns Tobias's  Fourth Amendment claim, the Court recognized the facts are hotly contested, precluding summary judgment. *Id.* at 19.

The district court recognized that disputes of fact prevented summary judgment in East's favor as to the failure-to-intervene claim. *Id.* at 21. And finally, in addressing Tobias's conspiracy claim—the primary lens through which East framed his motion—the district court held: given the "disputed facts, summary judgment is not appropriate because there is a 'possibility that the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives.'" *Id.* (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). This interlocutory appeal followed.

## SUMMARY OF ARGUMENT

At age 13, Tobias was arrested and subsequently convicted for a murder he did not commit. After spending years in prison, Tobias's conviction was overturned on direct appeal on the basis that, during the interrogation, the Detectives violated his constitutional rights.

East argued below that the evidence in the record was insufficient to sustain Tobias's claims against him. The District Court reviewed the record and determined that genuine disputes of material fact precluded summary judgment on each claim asserted against East. Despite this unreviewable determination, East immediately appealed.

This Court lacks jurisdiction to review the denial of East's motion for summary judgment; it is not a final order under 28 U.S.C. § 1291, and the lower court's determination that the evidence in the record "presents genuine issues of material fact is categorically unreviewable on interlocutory appeal." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009)). Nor can East obtain interlocutory review based upon arguments forfeited below and never presented to the District Court. *Chuman v. Wright*, 960 F.2d 104, 104 (9th Cir. 1992). The appeal should be dismissed.

But even if the Court had jurisdiction to consider East's contentions, they are without merit. First, the facts in this matter—as the briefing below illustrates and the District Court recognized—are hotly disputed. Nonetheless, East again erroneously asks this Court to make factual determinations in his own favor, to make inferences *against* Tobias, and to ignore evidence supporting Tobias's claims—all in direct contravention to the summary judgment standard. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). When the facts and reasonable inferences are taken in Tobias's favor, as they must, it is clear that a reasonable jury can conclude that East is liable here.

## ARGUMENT

### I. Standards of Review

This Court must always make an independent—and inherently *de novo*—examination of its own jurisdiction. *See In re Ozenne*, 841 F.3d 810, 814 (9th Cir. 2016) (recognizing that a federal court may not consider the merits of a case until it determines whether it has jurisdiction to do so). In addition, the appellant has the burden of establishing that the appellate court has jurisdiction to hear the case." *Id.* In determining whether it has jurisdiction over an appeal, the Court

should look at the substance of the appellant's arguments, rather than how the appellant chooses to label them. *See George*, 736 F.3d at 834 (explaining that, despite the language the appellant used, "the argument actually goes to the sufficiency of [the] evidence").

A district court's denial of summary judgment is also reviewed *de novo. Knox v. Southwest Airlines*, 124 F.3d 1103, 1105 (9th Cir. 1997).

## II. This Court Lacks Jurisdiction Over This Sufficiency-of-the-Evidence Appeal

This Court lacks jurisdiction over this appeal because Defendant East's arguments below alleged that there was insufficient evidence to support Plaintiff's claims, a proposition the District Court rejected. Despite East's repeated and distracting references to "clearly established" law, this is not a qualified immunity appeal. East never suggested below that any of those rights here were not clearly established at the time of the events in question (August of 2012). For good reason: there is no serious question the claims advanced by Tobias assert a violation of his constitutional rights. East's fundamental proposition continues to be that—in construing disputed facts in his own favor—there is not enough *evidence* to find that he violated Tobias's rights. But, no matter how many times East invokes the

phrase "clearly established law" as a distriction, that does not change

the fundamental basis for his argument—the sufficiency of the

evidence—which cannot be considered on interlocutory review.

## A. Federal Courts of Appeals Have Limited, Not General, Interlocutory Jurisdiction

This Court's appellate jurisdiction is strictly circumscribed, and

restricted nearly exclusively to final decisions of lower courts. 28 U.S.C.

§ 1291; *Will v. United States*, 389 U.S. 90, 96 (1967) ("All our

jurisprudence is strongly colored by the notion that appellate review

should be postponed, except in certain narrowly defined circumstances,

until after final judgment has been rendered by the trial court.").

"Ordinarily, orders denying summary judgment do not qualify as

'final decisions' subject to appeal." *Ortiz v. Jordan*, 562 U.S. 180, 188

(2011). There is a limited exception to that statute—the collateral order

doctrine. Under this doctrine, a district court decision is immediately

appealable if it (1) conclusively determines a disputed question; (2)

resolves an issue separate from the merits; and (3) is effectively

unreviewable on appeal. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 542,

546 (1949). In certain cases involving qualified immunity—*e.g.*, where

courts consider non-frivolouos and purely legal questions about whether

the law was "clearly established" at the time of the incident—interlocutory jurisdiction may be invoked. *Mitchell v. Forsyth*, 472 U.S. 511, 525-530 (1985).

However, the denial of summary judgment is not reviewable on interlocutory appeal where it raises questions of evidentiary sufficiency, *i.e.* "the correctness of the plaintiff's version of the facts" and what can ultimately be proved at trial. *Johnson v. Jones*, 515 U.S. 304, 313 (1995) (quoting *Mitchell*, 472 U.S. at 528); *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (concluding that appellate courts have jurisdiction over summary judgment orders denying qualified immunity "only to the extent 'the issue appealed concerned, not which facts the parties might be able to prove, but rather, whether or not certain given facts showed a violation of "clearly established law"' (quoting *Johnson*, 515 U.S. at 313)); *George*, 736 F.3d at 834.

The rationale in these cases is that an abstract legal question, can be resolved relatively efficiently by appellate courts in contrast to "questions about whether or not a record demonstrates a 'genuine' issue of fact for trial, [which,] if appealable, can consume inordinate amounts of appellate time" and waste appellate resources. *Id.* Moreover, the

limitations on the doctrine ensure interlocutory appeals remain the exception, not the rule—a restraint necessary to ensure § 1291 is followed, *id.* at 309, 319, and to prevent abusive litigation tactics. *See, e.g.*, *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 870 (9th Cir. 1992) (recognizing interlocutory appeals of qualified immunity can be abused as a delay tactic); *Abel v. Miller*, 904 F.2d 394, 396 (7th Cir. 1990) ("Unless courts of appeals are careful, appeals on the authority of *Mitchell* could ossify civil rights litigation. Defendants may defeat just claims by making suit unbearably expensive or indefinitely putting off the trial . . . so that some will abandon their cases even though they may be entitled to prevail.").

Determining whether jurisdiction exists "to hear an interlocutory appeal . . . turns on the *basis for denial.*" *Maropulos v. County of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009) (emphasis added); *see, e.g.*, *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1179 (9th Cir. 2013) (basis for district court's denial of summary judgment determines whether there is jurisdiction); *Garver v. Brandt*, 584 F. App'x 393, 394 (9th Cir. 2014) (similar). In other words, this Court looks at the reason the district court invoked when denying summary judgment to

determining whether an interlocutory appeal comes within this Court's limited jurisdiction. *See also Collins v. Jordan*, 110 F.3d 1363, 1370 (9th Cir. 1996) ("If the appellant argues that, contrary to the district court's assertions, an examination of the record reveals that there is no dispute as to the facts, or that there is not sufficient evidence in the record to create such a dispute, we must dismiss for lack of jurisdiction.").

**B.    The District Court's Denial of East's Motion for Summary Judgment Was A Factual, Not Legal, Determination That Is Unreviewable Now**

Here, with each claim brought against him, the District Court denied East's motion on the basis of disputed fact. *See* 1PER at 17-18 (fabrication of evidence); *id.* at 17 n.4 (addressing East's causation argument because it is a "disputed issue of fact for the jury"); *id.* at 19-20 (fourth amendment "malicious prosecution"); *id.* at 20-21 ("a reasonable juror could conclude that Defendants passively participated in the constitutional deprivations that allegedly led to Plaintiff's conviction"); *id.* at 21 (given the "disputed facts, summary judgment is not appropriate" on the conspiracy claim). Given the consolidated briefing with the detectives, the District Court also addressed qualified immunity—although an argument not actually invoked by East—

finding that disputed issues of material fact precluded summary judgment on that basis too. *Id.* 23.

The District Court's determination was a response to the arguments East made in his motion. Those arguments centered on the sufficiency of the evidence, claiming that the *evidence* did not show that East violated clearly established law, rather than claiming that the *law* surrounding Plaintiff's legal claims was not "clearly established." District Ct. Dkt. 100 at 8 ("Plaintiff's Counts I-IV must fail because there is no evidence that East entered into a conspiracy to deprive Plaintiff of his constitutional rights."); *id.* at 9 ("There is no evidence of a conspiracy"); *id.* at 10 ("There is no evidence supporting an overt act in *furtherance* of a conspiracy") (emphasis in original); *id.* at 12 ("Plaintiff's proffered evidence to support a conspiracy are without merit"); *id.* at 15 (arguing that there was no evidence to show that East was acting under color of law, that his actions violated Plaintiff's constitutional rights, or that East's actions proximately caused Plaintiff's wrongful conviction); *id.* at 17-21 (arguing that "Plaintiff's Counts I-IV each fail for lack of evidentiary support"); *id.* at 22 (arguing

that Count IV fails because East did not fabricate evidence but truthfully and "independently identified Plaintiff").

Plaintiff's substantive claims against East—for fabricating evidence and detention in the absence of probable cause—were undisputedly clearly established in 2012. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) (fabrication of evidence claim is "self-evident"); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002) (recognizing Fourth Amendment so-called malicious prosecution claim). Likewise, there is no dispute that conspiring to violate a civilian's constitutional rights was clearly established in 2012. *E.g.*, *Franklin v. Fox*, 312 F.3d 423, 441 (9th. Cir. 2002). East also did not claim below that it was not clearly established in 2012 that failing to intervene to stop the violation of someone's constitutional rights could provide liability against a police officer.[3]

---

[3] East failed to meaningfully raise an argument that he was entitled to qualified immunity to the district court, and therefore cannot raise the defense on appeal. *See Alaska Airlines, Inc. v. United Airlines, Inc.,* 948 F.2d 536, 546 n.15 (9th Cir. 1991) (arguments not made at summary judgment cannot be made on appeal). East dedicated one paragraph to the notion of qualified immunity in which he failed to make a single argument or cite a single case concerning relevant clearly established law. Instead, this cursory passage repeated his same sufficiency-of-the-evidence argument that made up the rest of his motion. The same is

Authorities cited by East actually support Tobias. For example, this case is analogous to *Maropulos*, where this Court dismissed an interlocutory appeal following the denial of summary judgment were the movant argued the plaintiff "failed to present sufficient evidence to create a triable issue" and the "basis for the denial" of summary judgment was the lower court's finding of "genuine issues of material fact that precluded summary judgment." 560 F.3d at 975.

This case is further controlled by *Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018), discussed by East (Br. 25-26). There, this Court concluded it lacked jurisdiction over claims where: (a) the district court found genuine issues of material fact precluded summary judgment;

---

true here. Despite East's vague and/or inapposite references to immunity (Br. at 28-29), East did not below assert an abstract legal issue related to qualified immunity. To ensure interlocutory jurisidciton is not abused, courts of appeal look past the mere "label" attached to arguments by litigants and examine their *substance. George*, 736 F.3d at 837; *see also Stinson v. Gauger*, 868 F.3d 516, 525 (7th Cir. 2015) (*en banc*) (emphasizing that if the Court "'detect[s] a back-door effort to contest the facts, we will reject it and dismiss the appeal for want of jurisdiction.'" (quoting *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011))); *Reyes v. City of Richmond*, 287 F.3d 346, 351-52 (5th Cir. 2002) (recognizing that "despite giving lip service to the correct legal standard, [an officer's] argument d[id] not take the facts in a light most favorable to the Plaintiffs," that the appeal was actually challenging the sufficiency of the evidence, and accordingly dismissing the appeal for lack of jurisdiction).

(b) the "legal standards for plaintiff's" constitutional claims "are not in dispute"; and (c) where the officer claimed that the evidence was insufficient to show that he was liable under those standards. *Id.* at 1211.This is precisely what East argued. Indeed, *Foster* recognized, this Court "may not reweigh the evidence to evaluate whether the district court properly determined there was a genuine issue of material fact." *Id.* Moreover, the *Foster* Court did exercise interlocutory jurisdiction over other claims, but only "[b]ecause the facts related to th[o]se claims [were] undisputed," which is *not* the case here. *Id.* at 1213.

In sum, given the basis for the District Court's denial of summary judgment, and the arguments East made below, this Court lacks jurisdiction over his interloctory appeal.

### C. That East's Current Arguments Are Based Upon Disputed Facts Confirms This Court Lacks Jurisdiction

While the foregoing illustrates this Court lacks jurisdiction, it is perhaps additionally worth noting that East has failed to adhere to the summary judgment standard even on appeal where his arguments are premised on construing disputed facts in his favor and making inferences from undisputed facts in a biased and self-serving way,

rather than construing the facts in Tobias's favor, as he must. *See*

*Tolan*, 134 S. Ct. at 1863 ("[T]he evidence of the nonmovant is to be

believed, and all justifiable inferences are to be drawn in his favor."

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).[4] Indeed,

the "exception to the normal rule prohibiting an appeal before a trial

works only if the appellant concedes the facts and seeks judgment on

the law." *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007). East has

failed to adhere to these rules and accordingly has not met his burden of

showing jurisdiction. *Cf. George*, 736 F.3d at 837 (explaining that where

the appellant does not make an argument regarding clearly established

law that takes the facts in the light most favorable to the appellee, the

Court will not do the appellant's work for it, "either by manufacturing

its legal arguments, or by combing through the record on its behalf"

(quoting *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir.

---

[4] East argues that because there is a recording of his interview with the
Detectives and a copy of his written statement in the record, the
majority of the facts in this case are not dispute. This is wrong. *See Vos
v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The
mere existence of video footage of the incident does not foreclose a
genuine factual dispute as to the reasonable inferences that can be
drawn from that footage."). The parties dispute, among other things,
East's state of mind when speaking with the Detectives and writing his
statement falsely identifying Tobias as the shooter.

2012))); *Maddox ex rel. D.M. v. City of Sandpoint*, 732 F. App'x 609, 610 (9th Cir. 2018) (similar).

Thus, despite East's claim that he accepts Tobias's version of the facts for purposes of this appeal, Opening Brief ("Br.) at 27, his opening brief actually rejects those facts. Examples include but are not limited to the following:

- East asserts as an uncontested fact that he believed the shooter on the video was Tobias. Br. at 37. This is a direct rejection of Tobias's contention that East knew that Tobias was too young and too small to be the shooter, as shown by his statements to the Detectives. 2PER 122-23, ¶¶105-11. The district court found a genuine dispute of material fact on this issue. 1PER 16-18.

- East contends that he and the Detectives never agreed to take steps falsely implicating Tobias in the shooting. Br. at 48. But Tobias contends, and the district court found, that there is evidence in the record sufficient to show that East agreed with the Detectives to falsely implicate Tobias in the shooting through, among other things, a fabricated written

statement saying East had identified Tobias as the shooter. 2PER 122-123, ¶¶105-11; 1PER 21.

- East asserts as that he had no knowledge about the Detectives' other plans or actions to implicate Tobias in the Castaneda shooting. Br. at 45. But, East knew that the Detectives were going to use his false statement to prosecute Tobias, and he knew that the Detectives would be trying to obtain false identifications of Tobias from other people (including Negroe and other police officers as well as Contreras) or Tobias would have to "frickin pay." 2PER 361, ¶¶113-14, 116.

- East asserts that Cooley and Born honestly recognized the shooter in the surveillance video as Tobias. Br. 7. This directly contradicts Tobias's contention that Cooley and Born, like East, fabricated their purported identifications of Tobias from the grainy surveillance video as part of an effort to frame Tobias. 2PER 114-120, ¶¶78-100. The district court found that there are disputed issues of material fact regarding whether Cooley and Born fabricated their

statements that they had identified Tobias as the shooter. 1PER 16-18.

- East further relies on the fabricated Cooley and Born purported "identifications" in reference to Tobias's Fourth Amendment claim. Br. at 40. But, again, he has refused to recognize that Plaintiff's facts illustrate these claims are fabricated. 2PER 114-120, ¶¶78-100.

- East contends that no one helped him prepare his written statement that he had identified Tobias as the shooter from the surveillance video and that the language of the statement was totally his own. Br. 12. But during his meeting with the Detectives at Tobias's middle school, the three officers discussed what the content of East's written statement should be. 2PER 123, ¶111. In addition, East had a second meeting with the Detectives after Negroe made no identification where they discussed the report, and he subsequently corresponded with a third detective (Cortina) not only about his statement but about him obtaining a

statement from Negroe. These facts are further circumstantial evidence that contradicts East's contention.

- East claims he did not participate in the investigation of Tobias. (Br. P. 35). But, in addition to providing his false statement, East pulled photographs of Tobias in an attempt to find one resembling the shooter; provided the detectives with "Field Interview" cards; suggested other law enforcement officers who might provide false identifications; and subsequently obtained and submitted a statement from Negroe. 2PER 123, ¶¶111-12.

- East claims Arteaga believed Tobias was the shooter in the surveillance video. (Br. 11), but Plaintiff's fact is that Arteaga knew that Tobias was too young and too small to be the shooter. 2PER 109-10, ¶¶63, 65.

In short, East's discussion of the record shows that he repeatedly refuses to take all evidence and reasonable inferences in the light most favorable to Tobias. From top to bottom, East's arguments are premised and dependent on fundamental disputes with Tobias's version of the

facts.[5]  As a result, East cannot possibly present purely legal questions for the Court to consider on an interlocutory appeal, or, as explained below, in seeking a grant of summary judgment as a matter of law. The appeal should be dismissed.

### D.    East Cannot Obtain Jurisdiction Based Upon an Argument Forfeited Below

East raises for the first time on appeal a new argument: "[T]here is no clearly established law requiring police officers to prevent other police officers from violating constitutional rights other than in excessive force cases." Br. at 41; *id.* (acknowledging that "East did not make the point in the District court"). Because this argument was never

---

[5] *See* Br. at 37 (contending that contradictions between East's oral statements to the Detectives and his written statement saying he had identified Tobias as the shooter were merely differences in tone or characterization, not evidence of fabrication); *id.* at 40 (arguing that because Born and Cooley had already identified Tobias as the shooter in the video, East's identification was not "actively instrumental" in causing charges to be filed against Tobias); *id.* at 41 (explaining that "East's actions do not support the argument that he engaged in knowing and reckless fabrication"); *id.* at 45 (relying on his disputed contention that East did not know about the Detectives' plans to frame Tobias to argue that "[t]here was no point where Officer East would have been able to step in" and prevent the violation of Tobias's rights); *id.* at 47 (contending that East's actions do not support an inference that he had a meeting of the minds with the Detectives, after, among other things, omitting the fact that East and the Detectives discussed what East's statement should be).

raised to the district court, it simply cannot be the "basis for denial" this court reviews when determining whether it has interlocutory jurisdiction. *See Maropulos*, 506 F.3d at 975. Thus, such an argument cannot now create interlocutory jurisdiction over this appeal.

Moreover, appellate courts do not generally "consider an issue raised for the first time on appeal." *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir. 1985); *accord. Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991) (arguments not made at summary judgment cannot be made on appeal). That is particulary the case where, as here, the appeal is interlocutory rather than of a final judgment.[6] Instead, if a party fails to make an argument to the district

---

[6] The cases cited by East involve circumstances where an appellate court may to exercise its discretion to consider an argument not raised below after entry of a final order and where the appellate court already has jurisdiction under § 1291. None of these cases allow a litigant to attempt to obtain interlocutory jurisdiction via new arguments not raised below, and East has not cited an authority where a legal argument not raised below was found to be the basis for jurisdiction over an interlocutory appeal. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1010 (9th Cir. 2014); (considering whether the appellate court had discretion to consider a new argument on appeal of a district court's entry of judgment following a jury verdict); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1024 (9th Cir. 2003) (same); *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 432 (9th Cir. 2018) (considering whether the appellate court could consider a new argument on appeal from a grant of summary judgment); *In re Mercury Interactive Corp. Sec.*

court, that argument cannot be the basis for jurisdiction over an interlocutory appeal. *See Chuman*, 960 F.2d at 104 (concluding that forfeited arguments cannot divest jurisdiction of the district court and be raised on an interlocutory appeal in part because interlocutory appeals "significantly disrupt and delay trial proceedings"); *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) (cited in *Chuman* and explaining that defendants may "forfeit their entitlement to a pre-trial appeal"). To allow appellants to not make arguments below that would confer appellate jurisdiction and then raise them for the first time on appeal is contrary to statute, this Court's authorities, and the orderly operation of the federal courts. *See* 28 U.S.C. § 1291; *Will*, 389 U.S. at 96. Such a premise must be rejected.

Finally, even assuming a legal argument raised for the first time on interlocutory appeal could, by itself, be the basis for appellate jurisdiction, there is an additional reason why East's new argument does not satisfy the collateral-bar-doctrine: the argument is not collateral because it does not conclusively determine whether the

---

*Litigation*, 618 F.3d 988, 993 (9th Cir. 2010) (considering whether the appellate court could consider a new argument on appeal of a fee award).

defendant has a right to avoid trial based on qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (an appealable interlocutory decision *must* "conclusively determine the disputed question," "involve a 'clai[m] of right separable from, and collateral to, rights asserted in the action,'" and be "effectively unreviewable on appeal from a final judgment" (citations omitted)).

East's forfeited argument is not capable of conclusively deciding whether he has a right to be free from trial because it implicates just one of Tobias's claims against East (the failure-to-intervene claim). As discussed, the Court does not have jurisdiction to consider East's evidence-based arguments about the due process, Fourth Amendment, and conspiracy, meaning that those claims will necessarily proceed to trial. Any claim that East has a right to avoid trial—one justification for interlocutory appeal of a limited class of denials of qualified immunity— cannot be achieved by East's forfeited argument on a single claim.

### III. The District Court Correctly Found A Reasonable Jury Can Find East Violated Tobias's Constitutional Rights

Even assuming this Court had jurisdiction over this appeal, East has not met his burden of showing that no reasonable jury could find that he violated the constitutional rights of Tobias by fabricating

evidence pursuant to an agreement to falsely implicate a child in a murder he did not commit, seizing Tobias in the absence of probable cause pursuant to the same agreement, and refusing to intervene to stop the violations of Tobias's constitutional rights.

## A.    Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Sierra Medical Services Alliance v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (quoting *Anderson*, 477 U.S. at 248). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see Schuering v. Traylor Bros.*, 476 F.3d 781, 784 (9th Cir. 2007) ("In determining whether summary judgment is appropriate, we view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." (citation omitted)).

In *Tolan*, the Supreme Court emphasized the "importance of drawing inferences in favor of the nonmovant," while reversing the grant of qualified immunity because the lower court had failed to make inferences in the nonmovant's favor. 134 S. Ct. at 1866. It is established that every reasonable factual inference must be drawn in favor of the party opposing the motion for summary judgment, from both direct and circumstantial evidence. *See Coghlan v. Am. Seafoods Co. LLC.,* 413 F.3d 1090, 1095 (9th Cir. 2005) (plaintiff can defeat motion for summary judgment by pointing to either direct or circumstantial evidence); *see also, e.g., Baker v. Roman Catholic Archdiocese of San Diego*, 725 F. App'x 531, 532 (9th Cir. 2018) (reversing grant of summary judgment where district court "did not properly consider various pieces of circumstantial evidence in its summary judgment ruling"); *Chaney v. Wadsworth*, 700 F. App'x 592, 592 (9th Cir. 2017) ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (quoting *Tolan*, 134 S. Ct. at 1863)).

**B. East Cannot Obtain Summary Judgment Because He Has Refused to Accept the Facts In The Light Most Favorable to Plaintiff and Accept the Inferences that Flow from them**

The District Court recognized that factual disputes pervade here; that "the facts are hotly contested." 1PER 20. That remains the case on appeal. East has failed to take the facts in the light most favorable to Tobia and has attempted to self-servingly construe them in his favor. His argument is for the jury, not for judgment as a matter of law under Rule 56. Because East has failed to apply the summary judgment standard—and because the district court's determination that factual disputes pervade is unreviewable—East cannot obtain summary judgment. The District Court can be affirmed on that basis alone. *George*, 736 F.3d at 837; *Stinson*, 868 F.3d at 525; *Jones*, 630 F.3d at 680; *Reyes*, 287 F.3d at 351-52.

**C. A Reasonable Jury Can Conclude East Violated Tobias's Due Process Rights by Fabricating Evidence**

The fact that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" is a proposition that is "virtually self-evident." *Devereaux*, 263 F.3d at 1074-75. As the District Court properly recognized, a plaintiff can prove a

fabrication claim with direct evidence, or via circumstantial/indirect evidence. *Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018). Crcumstantially, a plaintiff can point to evidence illustrating "(1) [d]efendants continued their investigation . . . despite the fact that they knew or should have known that [the plaintiff] was innocent; or (2) [d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076.

Alternatively, "deliberate fabrication can be shown by direct evidence, for example, when 'an interviewer . . . deliberately mischaracterizes witness statements in her investigative report.'" *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) (quoting *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). On the "direct" route, the investigator's knowledge or reason to know of the plaintiff's innocence need *not* be proved, because the Constitution "prohibits the deliberate fabrication of evidence whether or not the officer knows that the person is innocent." *Id.* at 800.[7]

---

[7] The District Court properly found that Plaintiff had adduced sufficient evidence under either the "direct" or "circumstantial" route. The

Direct evidence of fabrication includes false statements in police reports and declarations, such as reports that "contain[] evidence or statements" that were "never made," as well as authoring reports that are inaccurate or misleading. *Costanich*, 627 F.3d at 1112; *Caldwell*, 899 F.3d at 1112 (triable issue of fact as to evidence fabrication where allegation included the claim that the officer authored "falsified notes").

### 1. Properly Construed, The Evidence Reveals that East Deliberately Fabricated Evidence

Here, Tobias alleges that East agreed to claim he "identified" Tobias when in fact he had actually stated that Tobias was far too small and too young to be the shooter, and that this constitutes fabricated evidence. *See Caldwell*, 889 F.3d at 1112 (explaining that evidence that on officer "deliberately mischaracterize[d] witness statements in her investigative report" constituted direct evidence of deliberate fabrication (quoting *Costanich*, 627 F.3d at 1111)). During the meeting, East was shown the surveillance video of the shooter several times, told by the Detectives that their suspect was a Berendo middle school student, and asked to try to make an identification from the Berendo

---

evidence supports that conclusion. For brevity, and given the extensive factual record, Plaintiff discusses the direct route alone here.

student body. 2PER 122, ¶104. But East told the Detectives he could not make an identification and that the shooter was too large to be a middle school student. *Id.* ¶¶105-07.

Despite his own acknowledgement that he could not identify the shooter, East told the Detectives that he was thinking of someone who was "a lot smaller in stature:" Art Tobias. *Id.* ¶107. Even though East had not identified Tobias, the Detectives immediately responded that Tobias was their suspect, to which East laughed and again observed that Tobias was "so much smaller." *Id.* ¶109. What is more, a review of the surveillance video makes clear that East could not have believed that Tobias shot Castaneda based on the size difference between Tobias (a 5-foot, 111-pound boy) and the shooter seen in the video (a 6-foot tall, 200-pound man). *Id.* ¶¶63, 65.

East knew that Tobias was too small to be the shooter, but nevertheless agreed to help the Detectives implicate him by providing a false statement claiming he had identified Tobias from the surveillance video. *Id.* ¶¶110-11. They even discussed what the content of East's statement would be, and East agreed to further assist the detectives,

including by providing pictures of Tobias and helping to procure identifications from others. *Id.* ¶¶111, 116.

In addition to the agreement inherent in the foregoing, East's written report constitutes fabricated evidence as well—it includes not only statements that were misleading and inaccurate but also statements that were "never made." To start, a reasonable jury can conclude East's statement is fabricated because itcontrasts starkly with East's comments during the meeting that the perpetrator was *not* a middle schooler. East wrote: "I watched the video several times and *stated* that I was fairly sure that the Suspect in the video *is* Art Tobias." *Id.* ¶122 (emphasis added). This includes two things that East never said: (1) he "stated" that he was "fairly sure"; and that he "stated" that the person *is* Art Tobias. In fact, East's comments to the Detectives were not only never said, they were very nearly the opposite: he repeatedly failed to make an identification from the video, said he would have a hard time doing so, and acknowledged that the shooter was too large to be Tobias (or any middle school student).

East also included in his statement that "the person in the video had a distinct walk and stature which is similar to that of Art Tobias."

*Id.* ¶123. East never made such an observation during his meeting with the Detectives, but added this explanation after the fact in an effort to bolster his false identification.

Moreover, East's report omits critical information about his meeting with the Detectives—facts that make the report completely misleading For example, East's report does not mention that the Detectives conducted a "show-up" by showing East a sinlge picture of Tobias; that he and the detectives then looked up additional pictures of Tobias in an effort to find some that purportedly "matched" the video; that the Detectives told him Tobias was their suspect and that they needed identifications of Tobias to make their case; *i.e.*, in "proving what [he] just saw"; and the list goes on. *Id.* ¶126. As the District Court recognized, the foregoing is sufficient to allow a reasonable jury to find for Plaintiff.

## 2. East's Arguments To the Contrary Fail

East has two arguments in response. Br. at 37-38. Both fail.

First, East tries to minimize the disparity between his oral statements at the meeting and his written statement, saying any differences are ones of "tone or characterization" or the result of

carelessness. *Id*. This Court has already rejected this very conclusion as "untenable in light of the principle that, on summary judgment, we must draw all factual inferences in favor of the nonmoving party." *See Costanich*, 627 F.3d at 1113. To be sure the record, especially when taken with all inferences in Tobias's favor, shows that East knew the shooter was not Tobias but deliberately provided false evidence to the contrary, all while knowing that the Detectives intended to use that evidence to prosecute Tobias for murder. This is a particularly strong conclusion when contextualized by the fact that East wrote this statement *after* the Detectives specifically laid out their plan (try to get more identifications, including from Tobias's mother, otherwise they would have trouble "proving what [East] just saw"); that the statement was written *after* East learned that another person (Negroe) had *not* made an identification; *and* where East assisted the officers in obtaining Mr. Negroe's statement that blatantly attempts to "walk back" what he said contemporaneously. *Compare* 7PER 985-86 (Negroe: "I can't picture anybody like that right now. . . . Honestly, no."), *with* 1PER 6 (noting that Negroe's written statement said that, after watching the video, he "couldn't remember the name of the student,"

but was able to identify Tobias when he left to go back to his office); 2PER 123-124, ¶¶112-13.

On these facts, a reasonable jury can easily find that East's written statement was not "careless" or a difference in characterizing East's state of mind. The dispute about how to interpret East's state of mind is one the jury should resolve. *See Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002); *Provenz v. Miller*, 102 F.3d 1478, 1489-90 (9th Cir. 1996); *e.g.*, *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985) (noting that an officer's defense "required the jury to resolve a number of factual questions, including the officer's state of mind")

In short, when Tobia's version of events is assumed and the inferences taken in his favor, a jury must determine how to resolve the disputes that pervade the interpretation of the evidence here. *See Caldwell*, 889 F.3d at 1115 (concluding that "there [was] a triable issue as to whether [he] intentionally fabricated his notes" unless only one interpretation of carelessness is possible); *Costanich*, 627 F.3d at 1113 ("[R]eporting that a witness said something she did not cannot be . . . characterized [as a mere misstatement].").

Second, East claims that, irrespective of his own false statements and report, "the result would have been the same." Br. at 38. This is, at core, a causation argument. And it was rejected by the District Court, because it too involves how a jury might interpret the sharply disputed facts. *See* 1PER 17 ("Officer East maintains any Section 1983 claims against him fail because his conduct was not the proximate cause of Plaintiff's injury. But this is simply another disputed issue of fact for the jury." (citing *Caldwell*, 889 F.3d at 1115)). East points out that Plaintiff was arrested before the officers had East's written statement. Br. at 38. But, this only proves Plaintiff's point: the Detectives *already* knew East was going to go with the plan, and he had agreed to do so in their first meeting with them (which they had the opportunity to confirm in the unrecorded second meeting). In addition, East was present during the arrest and agreed to drive the other student who was with Tobias at the time to the police station. 2PER 124, ¶¶116-17.

East in fact goes so far as stating that the probable cause declaration "did not even state that Officer East had made an identification." Br. 38 (citing 5ER651). This statement is extremely

misleading, and indicative of how far East has departed from the standards that govern summary judgment. The form states:

> The video depicting the shooting was downladed and shown to (2) LAPD Officers and (1) LAUSD Police Officer. Officers identified one of the shooters as being Art Tobias.

5ER651. There are no other LAUSD officers who spoke to the detectives—this undoubtedly is a reference to East, though he is not mentioned by name. East concedes that his report was also included in the Murder Book, which was provided to prosecutors. *Id.* ¶¶125-26. In short, the undisputed fact is that East's purported identification—which a reasonable jury could conclude was false and fabricated—*was* part of the evidence used to detain and prosecute Tobias.

The fact that additional fabricated evidence was used to frame Tobias does not alter the role that East's false identification played in the wrongful prosecution and other injuries suffered by Tobias. *See Spencer*, 857 F.3d at 801 ("A rule of law foreclosing civil recovery against police officers who fabricate evidence, so long as they have other proof justifying the institution of the criminal proceedings against a defendant, would not follow the statute's [§ 1983] command or serve its purpose." (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014))).

In the end, the question of proximate cause—and proportional harm—is one for the jury, especially given that there can be, and often are, multiple proximate causes of a plaintiff's injuries. *See Mendez v. Cty. of Los Angeles,* 897 F.3d 1067, 1078 (9th Cir. 2018) ("The officers' argument ignores the fact that 'it is common for injuries to have multiple proximate causes.'" (quoting *Staub v. Proctor Hosp.,* 562 U.S. 411, 420 (2011))); *Prosser v. Crystal Viking F/V,* 940 F.2d 1535 (9th Cir. 1991) (citing *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 770 (9th Cir. 1981)) (proximate cause is generally a question for the jury); *cf. Whitlock v. Brueggemann,* 682 F.3d 567, 583 (7th Cir. 2012) (explaining that the question of what role the fabricated evidence played in depriving plaintiff of his liberty is a fact-specific inquiry into causation where "multiple proximate causes are often present" and "an actor's tortious conduct need not be close in space or time to the plaintiff's harm to be a proximate cause." (citing REST. 3D TORTS § 29 cmt. b.)).

The denial of summary judgment on this claim was proper.

## D. East Violated Tobias's Fourth Amendment Rights by Causing Him to Be Detained and Prosecuted Without Probable Cause

### 1. Elements of the Claim

As the Supreme Court recently affirmed in *Manuel v. City of Joliet*: "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." 137 S. Ct. 911, 918 (2017). This can occur both when "the police hold someone without any reason before the formal onset of criminal proceedings" and when "a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* Tellingly, East does not contend that it was not clearly established in 2012 that it was unconstitutional for a police officer to cause the seizure of a person in the absence of probable cause. Br. at 39-41. Nor would he be on grounds to do so. *See Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) ("If a state official 'submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth, . . . he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost.'" (quoting *Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011))).

Before *Manuel*, this type of claim has been characterized as one of "malicious prosecution." *See, e.g.*, *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Such claims may be brought against police officers and investigators, as well as prosecutors. *Smith*, 640 F.3d at 938. Under these cases, a plaintiff was required to show that he was prosecuted, with malice, and without probable cause. *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015); *Smith*, 640 F.3d at 938; *Awabdy*, 368 F.3d at 1066.

In light of *Manuel*, however, the ad-hoc importation of common law "malicious prosecution" elements like malice into such a Fourth Amendment claim should be re-examined. 137 S. Ct. at 921; *see also Rehberg v. Paulk*, 566 U.S. 356, 366 (2012) (noting that "§1983 is [not] simply a federalized amalgamation of pre-existing common-law claims"). Specifically, the Supreme Court has consistently rejected the notion that the Fourth Amendment includes a subjective component like malice. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Graham v. Connor*, 490 U.S. 386, 397 (1989)

("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

But, even if the claim were labeled "malicious prosecution," the District Court still correctly recognized that East cannot obtain summary judgment on this claim, particularly given the fact that the absence of probable cause can support an inference of malice, which is typically a question for the jury at any rate. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) ("Malice is usually a question of fact for the jury to determine."); *e.g.*, *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1107 (D. Ariz. 2013) ("A lack of probable cause may serve as evidence of improper purpose."); *Ayala v. KC Envtl. Health*, 426 F. Supp. 2d 1070, 1091 (E.D. Cal. 2006) (same).

### 2. A Reasonable Jury Can Find that East Is Liable For Violating Tobias's Fourth Amendment Rights

Here, East has not challenged the fact that—on Plaintiff's facts— there was no probable cause to arrest Tobias. Br. at 39-41. That is appropriate, given that Tboias alleges that *all* of the evidence presented against him was fabricated, a fact that precludes a finding of probable

53

cause. *See Manuel*, 137 S. Ct. at 919-20 ("All that the judge had before him were police fabrications," so "[t]he judge's order holding Manuel for trial [] lacked any proper basis. And that means Manuel's ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights."); *Caldwell*, 889 F.3d at 1116 (concluding that "if a plaintiff establishes that officers either presented false evidence to or withheld crucial information from the prosecutor," then the analysis returns to whether the officers' actions caused the plaintiff's harm); *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997) (holding where probable cause is "'tainted by the malicious actions of the government officials [involved]' does not preclude a claim against the officials involved" (quoting *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988))).

Under this Court's law, East may be liable where there is evidence that he (1) "knowingly provided misinformation [to the prosecutor], (2) concealed exculpatory evidence, or (3) otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *See Awabdy*, 368 F.3d at 1067. For example, allegations that a state actor "knowingly or recklessly" provided false statements that led to the arrest and prosecution of the

plaintiff are sufficient to provide liability under the Fourth Amendment. *Id.* (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).

East arguably makes three (cursory) arguments concernings the Fourth Amendment claim. First, East contends that his role was too small to be a cause of the arrest and prosecution. But, as discussed, the evidence taken in the light most favorable to Tobias shows that East agreed to state that he had identified Plaintiff when he had not; that was part of the determination presented to the prosecutor initially; and that agreement was memorialized in a fabricated report that was presented to the prosecutor in the Murder Book (a fact East concedes). 2ER 123, ¶¶112, 123, 125, 126, 184. Moreover, East did all of this while knowing that his agreement to falsely claim he had identified Plaintiff and his subsequent memorialization of that falsehood would be used to arrest and prosecute Tobias. *Id.* ¶116 As above, however, the issue of the extent that East's contributions caused Tobias's damages is a jury question, and there is no mutual exclusivity with respect to proximate causes—they can be multiple. Further, given the fact that the fabricated evidence *was* submitted to the prosecutor, East has failed to

meet his burden "to prove that an independent intervening cause cuts off his tort liability." *See Beck v. City of Upland*, 527 F.3d 853, 863 (9th Cir. 2008) (internal quotes and citation omitted). East has failed to even attempt to meet his burden in this regard, and the question should be sent to the jury. *Id.*

Second, East argues that he cannot be liable because "the two LAPD gang officers had already identified Mr. Tobias as the shooter on the surveillance tape." Br. at 40. But these facts are disputed—Tobias contends, and a reasonable jury could find, that these "identifications" were fabrications. East cannot rely upon such disputed facts in support of his argument for  summary judgment.

Third, East suggests that the "only"  unlawful conduct Tobias identifies was "misinformation in the form of his written statement," and contends that his report did not include a "reckless or intentional falsification." Br. at 41. There are at least two problems with this contention. For one, Tobias contends that East's unlawful conduct began *before* he provided the statement, and that it continued after (particularly with respect to his actions related to Mr. Negroe). 2ER

123, ¶¶111-12, 116, 119. Second, this argument again improperly

ignores the disputed facts and paints a picture in East's favor.

### E. East and the Detectives Agreed to Prosecute A 13-Year Old for a Murder He Did Not Commit

There is more than enough evidence in the record to permit a

reasonable jury to find that East agreed to participate in the unlawful

arrest and prosecution of Tobias for the Castaneda Homicide.[8]

"To establish liability for a conspiracy in a § 1983 case, a plaintiff

must 'demonstrate the existence of an agreement or meeting of the

minds' to violate constitutional rights," but the "agreement need not be

overt and may be inferred on the basis of circumstantial evidence such

as the actions of the defendants." *Crowe v. County of San Diego*, 608

F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Env't Ctr.*, 192 F.3d at

1301). To be sure, a conspiracy need not be proved by evidence of an

---

[8] Defendant East's brief is telling for its title as it concerns the discussion of the conspiracy claim. For this claim, East states that "the version of material facts asserted by Mr. Tobias did not establish that Officer East conspired with the other defendants to deprive Mr. Tobias of his constitutional rights." Br. 46. This is ironic for two reasons—first, the material facts asserted by Tobias *should* have been assumed throughout, but this heading is further evidence they were not; *i.e.*, *expression uinis est exclusion alteris*. Second, despite the aspirational heading, this portion of the brief, like the others, *still* fails to assume the truth of Tobias's facts and the inferences that flow therefrom.

express agreement, but rather may be inferred from conduct or other "some facts probative of a conspiracy." *Ward v. EEOC*, 719 F.2d 311, 314 (9th Cir. 1983). In addition, to "be liable, each participant in the conspiracy need not know the exact details of the plan," only that they share the "common objective" of the conspiracy." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (*en banc*) (quoting *Gilbrook v. City of Westminister*, 177 F.3d 839, 856 (9th Cir. 1999)); *see also Franklin v. Fox*, 312 F.3d 423, 441 (9th. Cir. 2002) (same); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989) (en banc) (same)."For example, a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement' may allow a jury to infer the existence of a conspiracy." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

Likewise, this Court has been mindful that the existence of a conspiracy does not turn on a defendant's admission of guilt, something defendants (whether civil or criminal) almost never do. Instead: "'Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements

from circumstantial evidence or the existence of joint action.'" *Id.* at 1302; *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999) ("A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." (citation omitted)).

Here, there is ample evidence from which a jury could conclude that East agreed with the Detectives to arrest and prosecute Tobias for a murder they knew he did not commit. East acknowledged that the shooter in the surveillance video was too small to be Tobias or any other middle school student that he knew. 2PER 122, ¶105. Yet when the Detectives informed East that Tobias was their suspect and that they needed identifications of him as the shooter to build a case against him, East agreed to say he had identified Tobias. *Id.* ¶¶111-12. During the meeting, East and the Detectives went so far as to discuss what East's fabricated written statement should say. *Id.* ¶111. East then provided additional photos of Tobias from his school files and agreed to attempt to pull Field Interview cards regarding Tobias. *Id.* ¶¶111-12.

Significantly, they also discussed the subsequent steps: try to get others, including Negroe and Contreras, to make "identifications" from

the surveillance video, thereby "roping" the mom into the prosecution. *Id.* ¶¶112-14. Otherwise, they would have trouble "proving" what East "just saw"—a reference that implies they were not proving what he *actually* saw but what they were going to say he saw. *Id.* ¶114. When Negroe failed to make an identification from the video, the next steps took place: attempt to rope the mom into things; to make somebody "frickin pay"; and to try to generate an additional "identification," something East did by obtaining a statement from Negroe that conflicted with his contemporaneous account. *Id.* ¶¶113-14, 116, 119, 136, 139.

Then, the report East ultimately provided to the detectives falsely included the sentence that East "stated that I was fairly sure that the Suspect in the video is Art Tobias"; something he never said at all. Moreover, in a notable omission, the report failed to reference any of East's discussions with the Detective showing how they reached their agreement regarding the content of East's report. *Id.* ¶126. All of these actions constitute conduct indicative of an agreement to arrest and prosecute Tobias. *Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

Accordingly, in the face of such overwhelming evidence, the Court should affirm the District Court's denial of summary judgment on this claim. At most, this is a jury question. *Id.* at 1301-02 ("Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, 'so long as there is a possibility that the jury can "infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' . . .'"").

Keeping in mind that East is simply ignoring facts that support Plaintiff's claims (like what happened after the first meeting when East met with the detectives again, or when he corresponded with them in turning in his statement on LAPD instead of LAUSD letterhead, or when he obtained a statement from Mr. Negroe), East's only argument to the contrary is that the first meeting was "devoid of any exchanges that could be interpreted as an agreement to deprive Mr. Tobias of his rights." Br. 48. Again, the only way to reach this conclusion is to minimize or ignore the patently damning portions of the tape and to make inferences *against* plaintiff when reviewing the tape. Of course, there is no exchange where East and the detectives say in explicit terms "we are reaching an agreement to violate Art Tobias's constitutional

rights by doing X, Y, Z, and then 1, 2, 3." But, that level of specificity—which East seems to demand—is not required under established law. The far-lower threshold was met here and, as the District Court recognized, a reasonable jury could conclude that East's denials and self-serving interpretations of the conversation do not add up, particularly because East need not be involved in every aspect or event that followed after he agreed to go along with the scheme. *Cf.* Lacey v. Maricopa County, 693 F.3d 896, 935 (9th Cir. 2012) (*en banc*) (noting that conspiracy claims may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired"). East's arguments notwithstanding, Plaintiff's conspiracy claim must go to the jury.

## F. East Is Not Entitled to Summary Judgment on Plaintiff's Failure to Intervene Claim

When there is an opportunity to do so, a law enforcement officer has an obligation to intervene if his fellow officers are violating an individual's constitutional rights; if such an obligation is failed, both the offending officers and those who sat idly by are liable for the underlying constitutional violation. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-

90 (9th Cir. 2000). This Court has made clear that this obligation applies in the context of any constitutional violation committed by another officer which the officer had the opportunity to prevent. As stated in *Cunningham*: "'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen'" and "they ha[ve] an opportunity to intercede." *Id.* (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)).

As explained above, this Court should not allow East to present a forfeited argument for the first time during the course of this interlocutory appeal—that is plainly beyond this Court's jurisdiction and an abuse of the judicial process.

Even assuming it were before the Court, East has failed to provide an adequate or accurate framing of the legal landscape. For one, this court's binding precedents, as the broader language in *Cunningham* indicates, do not contain an "excessive force" limitation. *Id.; see also Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029-30 (9th Cir. 2002) (acknowledging an officer can be held liable for failing to intercede in an unconstitutional search); *Motley v. Parks*, 383 F.3d

1058, 1071 (9th Cir. 2004), *rev'd on other grounds*, 432 F.3d 1072 (9th

Cir. 2005) (denying summary judgment regarding a claim defendants

failed to intercede in harassment during a search).

Moreover, the great majority of other circuits to have addressed

the issue have repeatedly recognized that the obligation extends outside

of the excessive-force context. *See, e.g.*, *Abdullahi v. City of Madison*,

423 F.3d 763, 774 (7th Cir. 2005) ("[A]n officer who is present and fails

to intervene to prevent other law enforcement officers from infringing

on the constitutional rights of a citizen is liable under § 1983 if that

officer had reason to know: (1) that excessive force was being used,

(2) that a citizen has been unjustifiably arrested, or (3) *that any*

*constitutional violation has been committed by a law enforcement*

*official*; and the officer had a realistic opportunity to intervene."

(quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)) (emphasis

added)); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (same);

*Randall v. Prince George's County*, 302 F.3d 188, 204 (4th Cir. 2002)

(holding that, where they have a reasonable opportunity, officers have

an obligation to intervene in an unlawful detention by other officers);

*Reid v. Wren*, 57 F.3d 1081, (10th Cir. 1995) (unpublished) (holding that

officers have a constitutional obligation to intervene in an illegal seizure of property); *cf. Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) (explaining that *Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999), the case relied on by East, "did not preclude all failure to intervene claims . . . in false arrest cases," but rather "made explicit" that such claims are viable in certain circumstances).

District courts have provided further caselaw showing that officers are constitutionally liable for failing to intervene outside of the excessive-force context. *See, e.g., Ricks v. City of Pomona*, No. 18-cv-07862, 2019 WL 296199, at *4-5 (C.D. Cal. July 25, 2019) (finding a constitutional obligation to intervene in an unreasonable search); *Lu Hang v. County of Alameda*, No. C11-01984 TEH, 2011 WL 5024641 (N.D. Cal. Oct. 20, 2011) (finding that officers could be constitutionally liable for witnessing but failing to stop an unconstitutional interrogation and detention); *Stewart v. Jacobs*, 2:08-CV-0027-HRH, 2010 WL 11519288, at *11-12 (D. Ariz. Apr. 16, 2010) (denying summary judgment to defendants regarding a claim that they failed to intervene in an unconstitutional search); *Hurt v. Vantlin*, No. 3:14-cv-00092-JMS-MPB, 2017 WL 1021396 (S.D. Ind. March 16, 2017), *aff'd in*

*relevant part* 880 F.3d 831 (7th Cir. 2018) (denying summary judgment to defendants with regard to a claim that they failed to intervene in a coerced confession and the fabrication of evidence); *Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at *10 (N.D. Ill. Jan. 26, 2009) (denying summary judgment to defendants regarding the claim that they failed to intervene in plaintiff's coerced confession); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 345-46 (S.D.N.Y. 2009) (denying summary judgment to defendants regarding a claim that they failed to intervene in an unconstitutional search).

### 1. A Reasonable Jury Can Conclude East Failed to Intervene

Here, East had ample opportunity to intervene in the violation of Tobias's constitutional rights and prevent the resulting injury he suffered. For one, East could have stopped the two detectives at the school when they told him they thought the suspect was Tobias and East literally laughed in response. East could have indicated he was not willing to go along with "roping" the mother into this. East could have refused to provide the detectives with additional pictures or names of other LAPD officers who interacted with Tobias, knowing what the plan was. Instead, East knew that the Detectives were planning to attempt

to secure additional false "identifications" of Tobias from other individuals, including Tobias's mother, rather than the actual eyewitnesses to the crime (who presumably would *not* have identified Tobias, as they failed to at trial). 2PER 124, ¶¶113-14. East further knew that charges were brought against Tobias and that his case was proceeding to trial, during which East testified. 1PER 7. At any point, East could and should have stepped in to prevent the fabrication of evidence against Tobias, as well as the prosecution of Tobias based on that evidence. *Cunningham*, 229 F.3d at 1289-90.

Because he did not, a reasonable jury can find—like the District Court did—that East can be liable for those actions.

## CONCLUSION

This appeal should be dismissed for want of jurisdiction. Even assuming this Court had jurisdiction, East's arguments fail on the merits. The cause should be remanded for trial.

# STATEMENT OF RELATED CASE

**9th Cir. Case Numbers:** 18-56245 and 18-56360

The undersigned attorney states:

[ x ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

     Interlocutory appeal No. 18-56360, arises from the same proceedings below, No. 2:17-cv-1076-DSF-AS (C.D. Cal). The other appeal is brought by LAPD detectives who interrogated Tobias but is confined to issues related to the interrogation of Tobias that East did not conduct. The detectives do not appeal the denial of summary judgment on Tobias's fabrication of evidence, suppression of evidence, and other claims.

/s/ David B. Owens                **Dated**:   April 25, 2019

Respectfully submitted,

Dated: April 25, 2019

**ART TOBIAS**

By: /s/ David B. Owens
      *One of Appellee's attorneys*

      David B. Owens
      Cal. Bar No. 275030
      david@loevy.com
      Loevy & Loevy
      311 N. Aberdeen Street, 3rd Floor
      Chicago, Illinois 60607
      (312) 243-5900
      (312) 243-5902 (Fax)

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney certify that, on April 25, 2019, I caused the foregoing to be filed via the Court's electronic filing system, which effected service on all counsel of record.

/s/ David B. Owens

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 18-56245

I am the attorney or self-represented party.

**This brief contains** | 18,867 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ⦿ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ○ it is a joint brief submitted by separately represented parties;
  - ○ a party or parties are filing a single brief in response to multiple briefs; or
  - ○ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated [                    ].
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ David B. Owens | **Date** | 04/25/2019

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/2018*