Case No. 18-56245

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ART TOBIAS

Plaintiff-Appellee

v.

DANIEL EAST, L.A. School Police Officer, No. 959

Defendant-Appellant

---

On Appeal from the United States District Court
for the Central District of California
No. 2:17-cv-01076
Hon. Dale S. Fischer, United States District Judge

---

## APPELLANT'S REPLY BRIEF

---

Calvin House
GUTIERREZ, PRECIADO & HOUSE, LLP
3020 E. Colorado Boulevard
Pasadena, CA 91107
Telephone: 626-449-2300
Fax: 626-449-2330
calvn.house@gphlawyers.com

Attorneys for Appellant
Daniel East

# Table of Contents

Table of Contents ...................................................................i

Table of Authorities...............................................................ii

1.  Introduction.......................................................................1

2.  Argument..........................................................................2

    A.  Mr. Tobias has not shown that this Court lacks jurisdiction to review the denial of Officer East's summary judgment motion. ..........2

        i.  Mr. Tobias is mistaken about the nature of Officer East's appeal. ...........................................................................2

        ii.  Office East may assert a qualified immunity defense even though the law is clearly established. ...............................5

    B.  Claims presented for review ...........................................6

    C.  There is no factual basis for the fabrication of evidence claim against Officer East. ...........................................................7

    D.  There is no factual basis for the claim that Officer East caused Mr. Tobias to be detained and prosecuted without probable cause. ..10

    E.  There is no factual basis for the failure to intervene claim against Officer East. .........................................................13

        i.  Mr. Tobias has not shown that there was a clearly established duty to intervene outside the excessive force context. ...................13

        ii.  Officer East did not have the opportunity to intervene to prevent constitutional violations by the LAPD defendants. ...........14

    F.  There is no factual basis for the conspiracy claim against Officer East. ..............................................................................16

3.  Conclusion .......................................................................24

4.  Certificate of Compliance with Rule 32(a).......................25

# Table of Authorities

**Cases**

*A.K.H. v. City of Tustin*,
  837 F.3d 1005 (9th Cir. 2016) ...............................................6

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ...............................................13

*Awabdy v. City of Adelanto*,
  368 F.3d 1062 (9th Cir. 2004) ...........................................12

*Behrens v. Pelletier*,
  516 U.S. 299 (1996) ...............................................2

*Black v. Montgomery County*,
  835 F.3d 358 (3d Cir. 2016) ...............................................8

*Caldwell v. City & County of San Francisco*,
  889 F.3d 1105 (9th Cir. 2018) ...........................................8

*Chuman v. Wright*,
  76 F.3d 292 (9th Cir. 1996) ...............................................7

*Costanich v. Department of Soc. & Health Servs.*,
  627 F.3d 1101 (9th Cir. 2009) ...........................................8

*Foster v. City of Indio*,
  908 F.3d 1204 (9th Cir. 2018) ...........................................2

*Gausvik v. Perez*,
  345 F.3d 813 (9th Cir. 2003) ...............................................8

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013) ...............................................2

*Hernandez v. City of San Jose*,
  897 F.3d 1125 (9th Cir. 2018) ...........................................6

*Isayeva v. Sacramento Sheriff's Department*,
  872 F.3d 938 (9th Cir. 2017) ...............................................6

*Keates v. Koile*,
  883 F.3d 1228 (9th Cir. 2018) ...........................................8

*Manuel v. City of Joliet*,
  137 S. Ct. 911 (2017) ...............................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................4

*Menotti v. City of Seattle*,
  409 F.3d 1113 (9th Cir. 2005) ..............................................4

*Motley v. Parks*,
  383 F.3d 1058 (9th Cir. 2004) ............................................13

*Motley v. Parks*,
  401 F.3d 1030 (9th Cir. 2005) ............................................14

*Motley v. Parks*,
  432 F.3d 1072 (9th Cir. 2005) ............................................14

*Pauluk v. Savage*,
  836 F.3d 1117 (9th Cir. 2016) ..............................................2

*Poppell v. City of San Diego*,
  149 F.3d 951 (9th Cir. 1998) ................................................4

*Ramirez v. Butte-Silver Bow County*,
  298 F.3d 1022 (9th Cir. 2002) ............................................14

*Scott v. Harris*,
  550 U.S. 372 (2007) ..........................................................3, 4

*Spencer v. Peters*,
  857 F.3d 789 (9th Cir. 2017) ................................................8

*Taylor v. List*,
  880 F.2d 1040 (9th Cir. 1989) ..............................................7

*Thompson v. Runnels*,
  705 F.3d 1089 (9th Cir. 2013) ..............................................7

*Usher v. Los Angeles*,
  828 F.2d 556 (9th Cir. 1987) ..............................................11

*Wilkinson v. Torres*,
  610 F.3d 546 (9th Cir. 2010) ................................................3

*Yagman v. Garcetti*,
  852 F.3d 859 (2017) ..........................................................11

**Statutes**

Cal. Pen. Code, § 148 ..............................................................15

# 1. Introduction

The answering brief mistakenly claims that Officer East's appeal is based on the sufficiency of the evidence. Officer East accepts the chronological facts established by the evidence that Mr. Tobias relies on and the *reasonable* inferences that can be drawn from that evidence. He rejects the speculation and innuendo that Mr. Tobias piles on top of the evidence to support the claim that Officer East acted unlawfully by writing that he was "fairly sure" Mr. Tobias was the murder suspect.

The only pieces of *evidence* about Officer East's involvement in the LAPD investigation are the transcript of the recording of his interview with the detectives [3 ER 284-310], his written statement [5 ER 649], the probable cause determination written by Detective Cortina [5 ER 651], Officer East's deposition [3 ER 262-82, 415-466] and those of the detectives whom he communicated with [Arteaga 2 ER 159-239; Cortina 3 ER 241-60; Motto 2 ER 33-67, 3 ER 402-13], and Officer East's testimony at Mr. Tobias's trial [4 ER 449-63]. None of that evidence supports a reasonable inference that Officer East fabricated evidence, participated in a malicious prosecution, failed to intervene to prevent a deprivation of Mr. Tobias's rights, or conspired with the LAPD officers.

## 2. Argument

### A. Mr. Tobias has not shown that this Court lacks jurisdiction to review the denial of Officer East's summary judgment motion.

#### i. Mr. Tobias is mistaken about the nature of Officer East's appeal.

As the Supreme Court and this Court have recognized, "a court of appeals has jurisdiction over an appeal from a denial of qualified immunity, even when the district court's order concludes that there are disputed issues of material fact."[1] Therefore, Mr. Tobias's focus on the arguments about sufficiency of the evidence in Officer East's motion papers and in the trial court's decision are beside the point. This Court has jurisdiction, "construing the facts and drawing all inferences in favor of [Mr. Tobias], to decide whether the evidence demonstrates a violation by [Officer East], and whether such violation was in contravention of federal law that was clearly established at the time.[2]

---

[1] *George v. Morris*, 736 F.3d 829, 835 (9th Cir. 2013). See also *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) ("Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and *Johnson* surely does not mean that every such denial of summary judgment is nonappealable").

[2] *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016). See also *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (appellate

When it reviews the denial of a summary judgment motion based on qualified immunity, the Court is not required to accept every contention that the plaintiff makes about what the evidence shows. It "must 'view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion.'" [Citations omitted] However, when the facts, as alleged by the non-moving party, are unsupported by the record such that no reasonable jury could believe them, [the Court] need not rely on those facts for purposes of ruling on the summary judgment motion."[3]

Therefore, the Court should credit and give all "reasonable inferences" to Mr. Tobias's evidence, and then determine whether the record permits a "rational conclusion" that Officer East violated clearly

---

jurisdiction extends to deciding "whether or not certain given facts showed a violation of 'clearly established law'").

[3] *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). See also *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

established law.[4] Mr. Tobias "must do more than simply show that there is some metaphysical doubt as to the material facts."[5]

An inference that must be credited in deciding whether summary judgment is appropriate "is 'any passing from knowledge to new knowledge.' The passage cannot be mere speculation, intuition or guessing. The key to a logical inference is the reasonable probability that the conclusion flows from the evidentiary datum because of past experiences in human affairs."[6] Once the Court has "drawn all inferences in favor of [Mr. Tobias] to the extent supportable by the record," the lawfulness of Officer East's actions "is a pure question of law."[7]

The assertions that Mr. Tobias cites to support his claim that Officer East's appeal is based on sufficiency of the evidence are not reasonable or logical inferences, but his arguments about the facts. The references are to his separate statement of material facts, and not to the

---

[4] *Menotti v. City of Seattle*, 409 F.3d 1113, 1131 n.33 (9th Cir. 2005).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[6] *Poppell v. City of San Diego*, 149 F.3d 951, 954 (9th Cir. 1998).

[7] *Scott, supra*, 550 U.S. at 381 n.8.

evidence. (See Brief in Opposition, pp. 30-33.) For example, he refers to his "contention" that Officer East knew Mr. Tobias was not the shooter, he "contends" that Officer East agreed to falsely implicate Mr. Tobias, he argues that Officer East knew the LAPD defendants were going to use his statement to prosecute Mr. Tobias, and he refers to his "contention" that two of the LAPD defendants fabricated their identifications. Officer East's disagreement with Mr. Tobias's characterizations of the evidence is not a basis for refusing to consider the appeal. The District Court should have granted summary judgment, because Mr. Tobias's speculation, intuition and guessing are not supportable by the record.

### ii. Office East may assert a qualified immunity defense even though the law is clearly established.

Although Mr. Tobias argues that this Court lacks jurisdiction because Officer East does not challenge whether the applicable law is clearly established, decisions from the Supreme Court and from this Court make clear that collateral order review is appropriate to address either prong of the qualified immunity analysis, that is, (1) whether the defendant's conduct violated a constitutional right, or (2) whether the

right was clearly established.[8] Hence, a defendant like Officer East, who appeals a denial of qualified immunity on the ground that his conduct did not violate a constitutional right, has raised a legal issue that "may be properly heard in an interlocutory appeal."[9]

## B. Claims presented for review

The operative complaint asserted seven counts against all defendants. Mr. Tobias does not dispute that he has declined to pursue the seventh count (*Monell*) and the withholding of evidence portion of the third count against Officer East. Although his answering brief does not identify the counts that he believes he *is* pursuing, Mr. Tobias only provides arguments to support the claims for fabricating evidence (part of the third count), detention and prosecution without probable cause in violation of the Fourth Amendment (part of the fourth count), failure to intervene (the fifth count), and conspiracy (the sixth count). Consequently, he has waived any argument he may have had that the

---

[8] *Isayeva v. Sacramento Sheriff's Department*, 872 F.3d 938, 945 (9th Cir. 2017) ("Either prong can be adjudicated on appeal by taking the facts as most favorable to the plaintiffs and applying the pertinent legal standards to those facts"). See also *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018).

[9] *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1010 (9th Cir. 2016).

District Court was correct in refusing to dismiss those unsupported claims.[10] Therefore, this Court should, at a minimum, direct that the First, Second and Seventh Counts, and the withholding of evidence theory in the Third Count, be dismissed as against Officer East.

In evaluating the claims, this Court should focus on Officer East's actions, and not get lost in the details of the actions and motives of the LAPD defendants. That is because "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant."[11] An officer who is a "mere bystander" to constitutional violations by others is not liable for their actions under section 1983.[12]

## C. There is no factual basis for the fabrication of evidence claim against Officer East.

As explained in the opening brief, this claim requires evidence (1) that Officer East's written statement contained statements that he knew or should have known were false, (2) that any discrepancies between what he said during his interview and what he wrote were

---

[10] *Thompson v. Runnels*, 705 F.3d 1089, 1103 (9th Cir. 2013) ("an appellee who fails to raise an issue in an answering brief forfeits it").

[11] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[12] *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).

more than careless or inaccurate, amounting to more than questions of tone or characterization, and (3) that, without the alleged fabrication, Mr. Tobias would not have been charged.[13]

Although Mr. Tobias argues that the written statement was false because Officer East had told the LAPD detectives that he could not identify the shooter, that is not what the evidence shows. Officer East said that he had a "hard time IDing that person," not that he could not identify him. He also said that he was "thinking of" Mr. Tobias when he watched the video, commented that Mr. Tobias had just recently shaved his head, and said that the picture obtained from Mr. Tobias's mother looked like Mr. Tobias before he shaved his head. [2 ER 293-95] Although that identification may have been equivocal, so was Officer East's written statement. There, he said that he was "fairly sure," but noted that the video made the suspect look "slightly taller and thicker." [5 ER 648] Those discrepancies do not establish the sort of deliberate

---

[13] *Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018); *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018); *Spencer v. Peters*, 857 F.3d 789, 798-99 (9th Cir. 2017); *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016); *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1113 (9th Cir. 2009); *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003).

falsification necessary to prove a due process violation. They certainly do not support the assertion (page 46 of the Brief in Opposition) that Officer East "knew" the shooter was not Mr. Tobias, and "deliberately provided false evidence to the contrary."

Further, Mr. Tobias has not explained how Officer East's written statement could have constituted a cause in fact of his arrest and prosecution. Officer East did not provide his written statement until after Mr. Tobias had been arrested and interrogated. Therefore, it could not have had any effect on the proceedings until the presentation of the case to the deputy district attorney two days after the arrest, when it was included as part of the murder book. [3 ER 250-52, 5 ER 658] The probable cause declaration that was presented earlier to the judicial officer to justify holding Mr. Tobias at juvenile hall only referred to the oral identification that Officer East made during his interview. It does not refer to the written statement. [5 ER 651][14] There is no indication that the deputy district attorney relied on Officer East's written

---

[14] The Brief in Opposition (at pages 48-49) rightly notes that the probable cause declaration is not correctly described in the argument section of the opening brief. The opening brief correctly pointed out in the statement of the case (at page 13) that the declaration *did* mention Officer East's identification.

statement in deciding to file charges against Mr. Tobias. Since it was not presented at trial, it did not play any role in the conviction.

## D. There is no factual basis for the claim that Officer East caused Mr. Tobias to be detained and prosecuted without probable cause.

Although Mr. Tobias claims that there is evidence to support a *Fourth* Amendment claim against Officer East, he did not plead such a claim in the operative complaint. Indeed, he labeled the fourth count "malicious prosecution." [4 ER 554] The claims for relief in his complaint focused on the unlawful confession, the alleged fabrication of evidence, and the wrongful conviction. The complaint does not mention the Fourth Amendment, and, although it refers to the arrest, does not state that the arrest was a constitutional violation.

Hence, Mr. Tobias's reliance on *Manuel* to argue that he need not prove malicious prosecution is misplaced. That decision established only that the plaintiff could "challenge his pretrial detention on the ground that it violated the Fourth Amendment."[15] Mr. Tobias does not assert such a claim against Officer East.

---

[15] *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017).

This Court established the standard for a section 1983 "malicious prosecution" claim in *Usher v. Los Angeles*.[16] It requires the plaintiff to establish the elements of the state common law claim, and a purpose to deny the plaintiff his constitutional rights. The Court applied that standard as recently as 2017, when it stated: "[The plaintiff] 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'"[17] Mr. Tobias's arguments to support that claim lack merit.

First, he argues that malice established by the lack of probable cause. But probable cause is a concept that applies to unlawful arrests and searches. Mr. Tobias does not claim that Officer East arrested or searched him. Therefore, lack of probable cause does not enter into the determination of whether Officer East's actions were lawful.

Next, he argues that, through his written statement, Officer East knowingly provided misinformation to the deputy district attorney. Even if the written statement met that standard (and we have

---

[16] 828 F.2d 556, 562 (9th Cir. 1987).

[17] *Yagman v. Garcetti*, 852 F.3d 859, 867 (2017).

explained in the preceding section why it does not), there would still have to be facts to establish that Officer East's written statement "was actively instrumental in causing the initiation of legal proceedings."[18] Although Officer East's statement was included in the murder book presented to the deputy district attorney, there is no evidence that it had any effect on his decision to file charges.

Finally, he argues, contrary to the case he presents elsewhere in his brief, that Officer East's unlawful conduct somehow began *before* he provided his written statement. But, he does not cite any evidence of what that unlawful conduct is supposed to have been. It is undisputed that Officer East did not know anything about the Castaneda murder before the two LAPD detectives arrived at his school to interview him. Mr. Tobias concedes that Officer East did not engage in any unlawful conduct during the interview. Therefore, there is no basis for claiming that Officer East violated Mr. Tobias's rights before he prepared his written statement.

---

[18] *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

**E. There is no factual basis for the failure to intervene claim against Officer East.**

*i.  Mr. Tobias has not shown that there was a clearly established duty to intervene outside the excessive force context.*

Although the answering brief cites some cases that appear to recognize a duty to intervene outside the excessive force context, they provide no authority that would make it clear to a reasonable police officer in Officer East's position that he was subject to liability for not preventing another law enforcement agency from pursuing criminal charges against Mr. Tobias. There is no Supreme Court decision that even mentions the issue. Absent such a ruling, as the Supreme Court has explained, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[19]

The two decisions that Mr. Tobias cites from this Court do not provide any warning. *Motley v. Parks*,[20] which Mr. Tobias claims was reversed "on other grounds," was actually vacated with a direction that it "not be cited as precedent by or to this court or any district court of

---

[19] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[20] 383 F.3d 1058 (9th Cir. 2004).

the Ninth Circuit."[21] The basis for the Court's decision in *Ramirez v. Butte-Silver Bow County*[22] was that the officers who were the subject of the claim were not aware that the search was illegal. Whatever those two precedents may say about the availability of a failure to intervene claim outside the excessive force context, they could not have alerted Officer East to the need to block the LAPD's efforts to pursue Mr. Tobias for the Castaneda murder.

The cases cited from other jurisdictions do not provide any more clarity. They simply show that there is no judicial consensus on the parameters of the duty to intervene. Mr. Tobias has not cited any case that imposes a duty to intervene to block another police agency's criminal investigation.

## ii. Officer East did not have the opportunity to intervene to prevent constitutional violations by the LAPD defendants.

Although Mr. Tobias claims that Officer East had the opportunity to stop the LAPD investigation and the subsequent prosecution, none of the suggested steps were feasible or would have been effective:

---

[21] *Motley v. Parks*, 401 F.3d 1030 (9th Cir. 2005). The en banc decision that followed did not even mention failure to intervene. See *Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005).

[22] 298 F.3d 1022, 1029-30 (9th Cir. 2002).

- Although Mr. Tobias claims that Officer East could have "stopped" the two detectives when they interviewed him at the school, he does not explain what that means. Officer East was not in the detectives' chain of command, did not know what information that had about Mr. Tobias's involvement in the murder, and could have subjected himself to criminal liability if he interfered in a police investigation.[23]

- Although Mr. Tobias claims that Officer East could have said he was not willing to go along with "roping" the mother in, he does not explain what effect that would have had on the investigation, or how he could prevent the detectives from contacting the mother.

- Although Mr. Tobias claims that Officer East could have refused to provide additional pictures or names, he does identify the pictures or names, nor does he explain how *not* providing those would have prevented the LAPD defendants

---

[23] California Penal Code section 148 makes it a crime to resist, delay, or obstruct any peace officer in the discharge or attempt to discharge any duty of his or her office.

from arresting and interrogating Mr. Tobias and presenting his case for prosecution.

- Although Mr. Tobias claims that Officer East could have somehow stopped the case from proceeding to prosecution and trial, he does not explain how. Officer East did not have any authority to control the steps the LAPD defendants took during their investigation, to stop from them from presenting their case to the District Attorney's Office, nor to shut down the trial after it was under way.

Because Mr. Tobias has not identified any point where Officer East would have been able to prevent the violation of Mr. Tobias's rights by the LAPD defendants, there is no basis or holding him liable for failure to intervene.

## F. There is no factual basis for the conspiracy claim against Officer East.

As the answering brief acknowledges, Mr. Tobias's conspiracy claim requires proof of an agreement to violate his constitutional rights. Although the conspiracy may be inferred from conduct, the facts must show that the conspirators share a common objective. Here, the

summary judgment evidence and the reasonable inferences from that evidence do not establish the facts necessary to prove a conspiracy.

Mr. Tobias attempts to support the conspiracy claim against Officer East by a series of conclusory sentences that cite assertions in the separate statement that he submitted in opposition to the summary judgment motion. He does not cite the evidence that would support his assertions. (Brief in Opposition, pp. 59-62.) The evidence cited in the referenced separate statement paragraphs does not support his assertions:

"East agreed to say he had identified Tobias," citing to paragraphs 105, 111-12 of the separate statement at 2 PER 122-23, which cite to pages 9 and 11-14 of the transcript of Officer East's interview, which are found at 3 ER 292, 294-97. Nowhere in those transcript pages say that he had agreed to identify Tobias, or anything from which one could reasonably infer that he had made such an agreement.

"East and the detectives went so far as to discuss what East's fabricated written statement should say," citing to paragraph 111 of the separate statement at 2 PER 123, which cites to pages 11-14 of the transcript of Officer East's interview, which are found at 3 ER 294-97.

There is no discussion of Officer East's written statement in those transcript pages.

"Significantly, they also discussed the subsequent steps: try to get others, including Negroe and Contreras, to make 'identifications' from the surveillance video, thereby 'roping' the mom into the prosecution," citing to paragraphs 112-14 of the separate statement at 2 PER 123-24, which cite to pages 17-18 of the transcript of Officer East's interview, which are found at 3 ER 300-301. There is no discussion of steps in any plan to falsely charge Mr. Tobias with the Castaneda murder in those transcript pages. In response to a question from Detective Motto about who at the school "would know who this kid is" Officer East does mention a "Ms. Ortiz" and Mr. Tobias's "current teacher." Officer Motto mentions roping Mr. Tobias's mother (Contreras), but Officer East does not agree to be part of that effort. There is no mention at all of Mr. Negroe.

"When Negroe failed to make an identification from the video, the next steps took place: attempt to rope mom into things; to make somebody 'frickin pay;' and to try to generate an additional 'identification,' something East did by obtaining a statement from

Negroe that conflicted with his contemporaneous account," citing to paragraphs 113-14, 116, 119, 136, 139 of the separate statement at 2 PER 124-25, 129-30, which cite to pages 17-18 of the transcript of Officer East's interview, which are found at 3 ER 300-301, two pages from Officer East's deposition, which are found at 3 ER 265-66, two pages from Detective Motto's deposition, which are found at 3 ER 410-11, a page from the LAPD's Chronological Record, which is found at 5 ER 644, three pages from the transcript of Ms. Contreras's interview, which are found at 7 PER 1176-77, 1195, one page from Detective Arteaga's deposition, which is found at 3 PER 311, and some pages from the LAPD's detective manual and expert testimony concerned with interrogation techniques.

This fantastical account ignores one crucial fact and distorts the evidence relied on beyond recognition. The crucial fact is that Mr. Negroe is the one who told the detectives that he saw a student outside the school who looked like the image on the video. Therefore, Officer East did not obtain a statement from Mr. Negroe that "conflicted with" his account at the school. Mr. Negroe's role is clear from the accounts of all those present when he directed the detectives to Mr. Tobias:

8. We then all left the office. I was walking down the hallway with Officer East and the detectives a short distance behind me. As I walked, I saw a student standing outside the school, by the front entrance. The school had been dismissed already. Upon looking at the student, I believed that he matched the person I had just seen in the surveillance video. I informed the detectives, who then approached the student that I pointed out to them. I am informed and believe that that student was Art Tobias.

[Negroe Declaration, 4 ER 483]

… [Mr. Negroe] advised us that there was a person he observed on the video who he believed was outside.

Q. Okay. And did you then go outside?

A. Yes.

Q. Did you see him yourself? Did somebody point him out to you? What happened?

A. I believe I observed the person who I observed in the videos, standing in front of the school.

[Arteaga Deposition, 3 PER 274]

Q. When Mr. Negroe came back in, what did he say?

A. He had knocked on the door, and when he opened the door, he stated that the person that he had seen on the video earlier was now standing inside the hallway, down in the hallway from where the office where we were, and he directed us to that person.

Q. Did he say anything else?

A. Not that I recall. But he walked us down the hallway to where the person that he said was the person he saw in the video.

Q. So it's just a matter of coincidence that when he left the room, he walked out and just ran into Mr. Tobias.

A. I guess so. Because he came back and told us that the person he just saw in the video was standing in the hallway.

[Motto Deposition, 3 ER 411-12]

Q. And that's when Mr. Negroe came in?

A. Correct.

Q. And you don't know anything about what was said by Mr. Negroe when he came in?

A. Mr. Negroe said something to the detectives and the detectives told me, "Hey, Art Tobias is outside hanging out with a guy. We need your help with something." And that's when I offered my assistance.

[East Deposition, 3 ER 430-31]

The other evidence cited to support that description of the operation of the conspiracy does not provide facts or inferences to support the claim that Officer East had anything to do with the "interrogation" of Mr. Tobias's mother or with trying to make an unidentified person "pay."

"Keeping in mind that East is simply ignoring facts that support Plaintiff's claims (like what happened after the first meeting when East met with the detectives again, or when he corresponded with them in turning in his statement on LAPD instead of LAUSD letterhead, or

when he obtained a statement from Mr. Negroe. . . ." Mr. Tobias does

not point to anything in the record to support these assertions, nor

could he. Officer East and Detective Motto described what happened

when Officer East returned after Mr. Negroe's interview:

> Q. Got it. Tell me what you remember about your conversation with Mr. East at that point before Mr. Negroe comes back in.
>
> A. My only recollection is that Officer East then prepared a statement. We asked him to prepare a statement about what had—he had seen on the video. That's all I remember about that. And I believe he did prepare a statement.
>
> Q. Did he prepare a statement then, while you were all in the room together?
>
> A. I don't recall. I don't recall if he did it there. I don't believe so. I believe that it was—we either received it or it was E-mailed. I don't remember exactly for sure  how it was obtained. But is was a statement he prepared, not us.

[Motto Deposition, 2 ER 45-46]

> Q. And after Mr. Negroe walked out, what did you do next?
>
> A. Then I went back inside to meet with the detectives.
>
> Q. And what happened in that conversation?
>
> A. Then we were discussing—you know, they're basically wrapping up the video, wrapping up the interview and that's when Mr. Negroe came back, knocking on the door.
>
> . . . .

> Q. What did you say in that conversation with the detective?
>
> A. They—I was just—We were discussing, "So, you know, what do you plan on doing next?" They're going to continue their investigation. And it was somewhat brief. And then that's when Mr. Negroe knocked on the door and interrupted them wrapping it up.

[East Deposition, 3 ER 265-66] That does not prove a conspiracy. Nor does the fact that Officer East wrote his statement on an LAPD report form. Mr. Tobias does not even try to explain how Mr. Negroe's statement is evidence of a conspiracy.

A review of the exhibits and deposition testimony that bear upon Officer East's interactions with the LAPD defendants shows that Mr. Tobias's allegations of a grand conspiracy are not reasonable inferences form that evidence. They are nothing more than speculation, intuition or guessing, which is not a basis for denying summary judgment.

### 3. Conclusion

The discrepancy between Officer East's statement that he was "thinking of" Mr. Tobias while watching the video, and his written statement that he was "fairly sure" that Mr. Tobias was the individual in the video is not sufficient to prove a claim of deliberate falsification against Officer East. Nor are any of Officer East's actions sufficient to support the three other claims that Mr. Tobias is pursuing against him. Because the lack of merit to Mr. Tobias's claims is apparent after construing all the evidence and every *reasonable* inference in his favor, this Court should reverse the District Court's decision, and direct that judgment be entered in favor of Officer East.

Respectfully submitted,

GUTIERREZ, PRECIADO & HOUSE, LLP

s/ <u>Calvin House</u>

## 4. Certificate of Compliance with Rule 32(a)

This brief contains approximately 5,700 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

[ ] it is a joint brief submitted by separately represented parties;

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature: s/ <u>Calvin House</u> Date: May 16, 2019